832 So.2d 153 (2002)
Deatrick BOLDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-3102.
District Court of Appeal of Florida, Second District.
November 6, 2002.
Rehearing Denied December 9 and December 10, 2002.
*154 Jack W. Shaw, Special Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann Pfeiffer Howe, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
A jury convicted Deatrick Bolden of burglary of a dwelling and petit theft. Bolden's trial was tainted by the improper admission of evidence concerning other unrelated crimes. Therefore, we reverse his convictions and remand for a new trial.
At Bolden's trial, two witnesses testified they noticed an unfamiliar silver car parked in their neighbor's driveway. The neighbor was not home, so the men investigated. They saw that the screen door was open and that one of the panels on the inside door had been removed. As one of the witnesses went to the back door, a man dressed in a red shirt and khaki shorts and wearing several gold chains came out the front door carrying a plastic cup. One of the witnesses saw him clearly, and both observed him racing away in the silver car. The witnesses called the police and described the suspect and his car, including a partial tag number.
About 30 minutes after this report, a police officer found the car at an apartment complex. The manager of the complex said the car had arrived a few minutes earlier, driven by a man who matched the witnesses' description of the suspect. Three other uniformed officers arrived, and they all went to the driver's apartment. The officers knocked and Bolden answered. He matched the physical description the witnesses had provided, but was wearing different clothes.
The officers told Bolden they were investigating a felony and asked if they could enter the apartment. Bolden *155 stepped aside, which the officers took to be his consent. One officer claimed Bolden told them they could "look around." The officers saw another man in a bedroom and went to that room to insure the second man did not pose a threat. On the floor of the bedroom, in plain view, were the clothes the witnesses had seen the burglar wearing.
The officers also discovered a large brown bag containing jewelry under Bolden's sink. At that point they decided they should obtain a search warrant. The warrant authorized a search for: (1) U.S. change amounting to approximately $70; (2) a large white plastic cup bearing the logo of a Las Vegas casino; (3) clothing possibly worn by the suspect during the commission of the burglary; (4) documents linking the car used during the burglary to Bolden; and (5) documents showing Bolden was the lessee of the apartment. After obtaining the warrant, the officers seized a number of pawn slips, a gym bag, credit cards, watches and other jewelry, as well as the clothing. The list of the items retrieved is over thirty pages long. The police videotaped the search.
At Bolden's trial, over defense objections, the State played the videotape of the search. The State also presented several witnesses who testified that items found during the search were taken from their homes during burglaries unconnected with the charged crime. The court abused its discretion in admitting this evidence. See Chandler v. State, 702 So.2d 186, 195 (Fla. 1997).
The test for admitting evidence of other crimes is relevance. Williams v. State, 110 So.2d 654, 660 (Fla.1959). In Bolden's case the State argued that the evidence concerning the other burglaries was relevant to prove identity and opportunity. See § 90.404(2)(a), Fla. Stat. (1999); Williams. When identity is the issue, "[t]he common thread in ... Williams rule decisions has been that startling similarities in the facts of each crime and the uniqueness of modus operandi will determine the admissibility of collateral crime evidence." Chandler, 702 So.2d at 192. Here, there were no startling similarities among the three burglaries. Although all occurred in Lee County within a few days of each other, the mode of entry in each was different. In the charged burglary, the suspect broke in through the front door; in the other two crimes, the burglar entered through windows. Further, whereas in the charged burglary the suspect took a cup of change, in the other burglaries he took credit cards, jewelry, and, in one, a handgun. In short, there were no identifiable points of similarity among the three crimes, and they bore no special characteristics or unusual circumstances that pointed to Bolden as their perpetrator. The "fingerprint" necessary to render the collateral crimes evidence relevant for the purpose of proving identity was completely missing here. See State v. Savino, 567 So.2d 892, 894 (Fla.1990).
As to opportunity, on appeal the State claims the evidence was admissible to establish the entire context in which the criminal conduct arose. See Foster v. State, 679 So.2d 747, 753 (Fla.1996). But this argument must fail as well. Cases applying this theory involve a continuous chain of criminal events. See, e.g., id. (noting that defendant planned to recoup gambling losses and all crimes discussed at trial were part of that scheme); Heiney v. State, 447 So.2d 210 (Fla.1984) (explaining that all crimes were part of defendant's plan to avoid criminal charges for shooting his roommate). No evidence at Bolden's trial connected the three burglaries, other than the fact they were committed around the same time in the same area.
*156 We reverse and remand for a new trial. At the new trial, evidence concerning the other burglaries, including the videotape of the search made of Bolden's apartment and the testimony of the other victims, must be excluded.
Bolden has also challenged the admissibility of evidence seized from his apartment on the ground that the search was illegal. We do not address this argument vis-a-vis the evidence of crimes other than the charged crimes, because we have determined that it must be excluded as irrelevant. Bolden is free to challenge the legality of the seizure of this evidence in any prosecutions based on the crimes to which it is relevant. As to the evidence seized that is relevant herethe clothes that were found on the bedroom floor and that matched the description given by the eyewitnesseswe find the search was legal insofar as it extended to these items that were in plain view. The court did not err in denying Bolden's motion to suppress this evidence. Jacobs v. State, 733 So.2d 552 (Fla. 2d DCA 1999); State v. Futch, 715 So.2d 992 (Fla. 2d DCA 1998).
Finally, Bolden also claims error in the fact that he was prosecuted by the Office of the Statewide Prosecutor (OSP) rather than the Lee County State Attorney. On appeal he contends the circuit court should have dismissed this case because the OSP lacked jurisdiction to prosecute his crime, which was committed in only one judicial circuit. See Art. IV, § 4(c), Fla. Const. (stating that the OSP has jurisdiction to prosecute crimes in two or more judicial circuits). But in his motion filed in the trial court Bolden did not seek dismissal of the information based on the OSP's lack of jurisdiction to prosecute. See Winter v. State, 781 So.2d 1111 (Fla. 1st DCA 2001). Indeed, he could not make that claim because the information against him was filed by the state attorney for the Twentieth Judicial Circuit, who clearly had jurisdiction to prosecute him for a crime committed in that circuit. Art. V, § 17, Fla. Const.; § 27.02, Fla. Stat. (1999). After the information was filed, the state attorney appointed OSP lawyers as special assistant state attorneys to handle the prosecution. When a defendant challenges the authority of a prosecutor to handle a case, rather than the jurisdiction of a prosecutor to bring a case, he must do so in direct proceedings by quo warranto. Austin v. State ex rel. Christian, 310 So.2d 289, 290 (Fla.1975); Winter, 781 So.2d at 1115. Bolden did not do so. Accordingly, we affirm on this point.
Affirmed in part, reversed in part, and remanded for a new trial.
WHATLEY and CASANUEVA, JJ., concur.