873 So.2d 374 (2004)
Harold GRAY, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-5796.
District Court of Appeal of Florida, Second District.
March 31, 2004.
Rehearing Denied May 24, 2004.
*375 James Marion Moorman, Public Defender, and Timothy J. Ferreri, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Harold Gray appeals his conviction for robbery, challenging the State's use of collateral crime evidence. We reverse and remand for a new trial because the trial court erred in allowing the State to introduce evidence of collateral crimes that was not relevant to the charged robbery.
At trial, the State argued that a series of collateral crimes was admissible because it was inextricably intertwined with the charged offense. The trial court allowed the evidence under this theory. On appeal, the State asserts that the collateral crime evidence was properly admitted both to show identity of the accused and because it was inextricably intertwined. We reject both theories.
From opening statements, the State portrayed Gray as being involved with an elaborate series of events. The first three witnesses testified about a brutal robbery of Robert Mancini, an elderly man who was attacked by two men while sitting in his vehicle outside the Driftwood Hotel. Gray was identified as being at the scene after the attack, but the State asserted that Gray was not one of the perpetrators of the robbery. Mancini's wallet was taken from him during the robbery.
Next, a witness testified about a robbery of a 7-Eleven store clerk, where a Visa credit card belonging to Mancini was left at the scene by the perpetrator. Cigarettes and soda were taken, but no one was injured and the robber apparently left on foot. Gray was not identified as the robber; however, he later made statements indicating that he had attempted to use Mancini's credit card at the 7-Eleven store.
*376 Next, the State presented evidence of the charged offense, a robbery of a clerk, Bakris Damassi, at an Exxon gas station. The robber presented a Mastercard belonging to Mancini and attempted to buy two cartons of Newport cigarettes and beer. When the card was declined, the robber punched Damassi in the face, grabbed the cigarettes and beer, and left in a white van. The crime took seven or eight minutes. No fingerprints were found and the store's video camera was not working at the time. Damassi turned the credit card over to police, and he picked Gray out of a photopack after the crime. He identified Gray in court as the perpetrator, although the crime occurred three years earlier and Gray's appearance had changed. Gray's hair, weight, and the fact that he now wore glasses were different. Damassi also identified Gray from a photograph that was taken days after the crime. An officer who responded to the Exxon robbery also testified for the State.
The next witness, Lisa Haven, testified to being attacked by Gray when she stopped to buy cigarettes at a Mobil gas station. Outside the store, Gray approached her to ask directions, then punched and pushed her, and snatched her purse before driving away in a white van with no tag on it. Another officer then testified to the fact that police located the white van with Lisa Haven's belongings in it, and a forensic detective testified about processing the van.
Another officer testified to observing two men in the van with no tag at an Amoco gas station. The officer did not know anything about the robberies, but was suspicious because the van had no tag. Gray left the area on foot and did not stop when the officer yelled at him to stop; but the other man with Gray, Craig Fisher, was apprehended. The police used canines to try to locate Gray. The officer did not get a good look at Gray and could not get an identification. In addition to Lisa Haven's belongings, there was also paraphernalia found in the van and a pack of cigarettes, but no cartons of cigarettes or beer.
Fisher testified that Gray had picked him up at a gas station and they were riding around together for about an hour-and-a-half before the encounter with the officer at the Amoco. They had known each other for twenty-four years. Gray did not tell Fisher anything about any robberies.
Finally, the State presented the testimony of an officer who had interviewed Gray in connection with the Mancini robbery. Gray told the officer that he had witnessed three black males commit the robbery, and he went over to assist the victim after the attack. Gray advised that he found a credit card on the ground, and he tried to pass the card at a 7-Eleven store the next morning, but the card was declined. The defense asserted in closing argument that although Gray admitted attempting to use Mancini's credit card at the 7-Eleven, a different person had committed the Exxon robbery and Gray was not involved with that.
A trial court's decision to admit collateral crime or Williams[1] rule evidence is reviewed for an abuse of discretion. Kulling v. State, 827 So.2d 311, 313 (Fla. 2d DCA 2002). A party may introduce collateral crime evidence when it is relevant to prove a material fact in issue like identity; however, collateral crime evidence is inadmissible when the evidence is relevant solely to prove bad character or propensity. § 90.404(2)(a), Fla. Stat. (2002); Kulling, 827 So.2d at 314. In order *377 for the collateral crime evidence to be admissible to show identity, the evidence must meet a strict standard of relevance. Kulling, 827 So.2d at 314. The collateral crime evidence must be strikingly similar and the similarity must have some special character or be so unusual as to point to the defendant. Id.; Sims v. State, 839 So.2d 807, 811 (Fla. 4th DCA 2003). The characteristics of the crimes must be so unique as to constitute fingerprint type evidence. Sims, 839 So.2d at 811. "Similar crime evidence is not admissible simply because it involves the same type of offense." Kulling, 827 So.2d at 314.
The collateral evidence of the three additional robberies does not meet this strict standard of relevance so as to be admissible in order to prove identity in the Exxon robbery. See, e.g., Bolden v. State, 832 So.2d 153 (Fla. 2d DCA 2002) (reversing burglary conviction where evidence linking the defendant to other burglaries committed around the same time in same area was inadmissible to prove identity); cf. Rogers v. State, 511 So.2d 526, 531 (Fla.1987) (upholding trial court's admission of similar robberies).
The question remains whether the collateral crime evidence was admissible because it was inextricably intertwined. Evidence that is inextricably intertwined with the crime charged is admissible under section 90.402, Florida Statutes (2002), because it is a relevant and inseparable part of the act which is in issue and it is necessary to admit the evidence to adequately describe the deed. Griffin v. State, 639 So.2d 966, 968 (Fla.1994); Flores v. State, 853 So.2d 566, 569 (Fla. 3d DCA 2003). In Flores, the court rejected the argument that evidence of a subsequent robbery was admissible as inextricably intertwined where property belonging to the subsequent robbery victim was found in the backseat of a car taken from the first robbery victim. Id. at 569; cf. State v. Cohens, 701 So.2d 362 (Fla. 2d DCA 1997) (ruling that evidence of prior attempted robbery was inextricably intertwined because it proved defendant's specific intent to commit charged robbery).
Here, the other crimes were not so intertwined with the Exxon robbery that it was necessary to describe them in order to accurately describe that deed. Although numerous witnesses testified for the State, only two had any knowledge of the Exxon robbery. While details of the Mancini robbery show how the victim lost possession of the credit card that was used by the perpetrator at the Exxon station, if Gray was not the perpetrator of the Mancini robbery, as the State conceded, then he was not the only person who had access to the credit card after the robbery occurred. And, even if we were to conclude that the Mancini, 7-Eleven, and Exxon robberies were intertwined by the credit cards, the Lisa Haven robbery and the fact that Gray was driving a van with no tag are collateral crimes that are not inextricably intertwined.
The improper collateral crime evidence was a feature of the trial and cannot be considered harmless error. Generally, when the identification of the defendant as a perpetrator rests on the testimony of a single witness, here Damassi, the erroneous admission of collateral crime evidence has not been considered harmless error. See Kulling, 827 So.2d at 315; Sims v. State, 839 So.2d 807, 812 (Fla. 4th DCA 2003).
Reversed and remanded for a new trial.
STRINGER and SILBERMAN, JJ., Concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).