930 So.2d 682 (2006)
Armando Andres VALDES, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-202.
District Court of Appeal of Florida, Third District.
March 29, 2006.
Rehearing and Rehearing Denied June 16, 2006.
*683 Gonzalez & Walsh and Carlos F. Gonzalez, Miami, for appellant.
Charles J. Crist, Attorney General, and Annette M. Lizardo and Valentia M. Tejera, Assistant Attorneys General for appellee.
Before COPE, C.J., and WELLS, and SUAREZ, JJ.
Rehearing and Rehearing En Banc Denied June 16, 2006.
WELLS, Judge.
Armando Valdes appeals his convictions and sentences on twelve counts of sexual abuse, claiming that the trial court reversibly erred in allowing his former wife to testify that he had been physically violent toward her and in allowing her to make derogatory remarks about him at trial. Valdes also alleges that his convictions for showing obscene material to a minor should be vacated because the State failed to prove that the materials at issue were obscene. We disagree and affirm.
Valdes married V.A. and S.A.'s mother in 1992 when V.A. and S.A. were six and four years old respectively. Shortly after the marriage, the former wife gave birth to the couple's only child together.
On December 1, 1999, V.A. informed a school counselor that Valdes had been sexually abusing her. The school counselor contacted the authorities and V.A.'s mother, who thereafter learned that Valdes had also been sexually abusing S.A. Valdes subsequently was charged with, and convicted of, sexual battery on a minor, lewd assault on a minor, showing obscene material to a minor, and engaging in sexual activity with a minor.
Valdes argues that the trial court abused its discretion by permitting his former wife to testify about domestic violence in the home, claiming this testimony to be irrelevant and, if relevant, too prejudicial. We disagree.
Testimony concerning domestic violence in the home was relevant in this case to explain why V.A. and S.A. failed to disclose the abuse for so long. The testimony was that Valdes intimidated the sisters by threatening that if they disclosed the abuse, they would cause a *684 break-up of the family; their mother would become a single parent; their little sister would grow up without a father; and they would be impoverished. He also threatened to destroy their home if the abuse were disclosed, a threat made plausible by his verbal and physical abuse which included instances in which he set fire to their mother's bathing suits and ripped up the landscaping following arguments. The testimony, including that from the former wife, regarding domestic violence was therefore relevant to put the entire relationship between Valdes and V.A. and S.A. into perspective and to explain why the sisters failed to disclose abuse that went on for approximately five years. See Lazarowicz v. State, 561 So.2d 392, 397 (Fla. 3d DCA 1990) (concluding that evidence of uncharged physical violence was properly admitted to explain a failure to report abuse).
We disagree with Valdes that Burgos v. State, 865 So.2d 622 (Fla. 3d DCA 2004), and Scarboro v. State, 832 So.2d 930 (Fla. 3d DCA 2002), are controlling and mandate reversal. In both Burgos and Scarboro, the context of the crimes charged and proof of the crimes themselves (battery on a law enforcement officer, resisting an officer with violence, and depriving an officer of means of protection) could be fully explained and adjudicated without detailed reference to the uncharged domestic violence which preceded the crimes charged in each case. That is not so in this case. Consequently, we find no abuse of discretion in permitting the former wife to testify regarding domestic violence. See Heath v. State, 648 So.2d 660, 664 (Fla.1994)(confirming that a "trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion"); Castro v. State, 547 So.2d 111, 114 (Fla.1989) (finding that "[a]bsent an abuse of discretion, a trial court's ruling on the admissibility of evidence will not be disturbed"); see also Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000) (noting that "[a] trial judge is afforded significant discretion in determining whether the prejudicial nature of evidence outweighs any relevance the evidence may have at trial").
We also find no reversible error in seven unsolicited, gratuitous comments made by the former wife during trial. Three of these comments drew no objection; two drew objections but were properly overruled; and the remaining two comments resulted in curative instructions which were sufficient "to dissipate any prejudicial effect." Buenoano v. State, 527 So.2d 194, 198 (Fla.1988); see also Gudinas v. State, 693 So.2d 953, 964 (Fla.1997) (denying a new trial where a witness made "an isolated comment which the judge dealt with swiftly and decisively by issuing a curative instruction"). Taken individually or together, these statements do not warrant a new trial.
Finally, we reject Valdes' claim that the State failed to present sufficient evidence to prove that he had shown obscene material to V.A. and S.A. Valdes was charged with showing to V.A. and S.A. "A PORNOGRAPHIC MOVIE and/or MOVIE DEPICTING A MALE AND FEMALE ENGAGING IN SEXUAL INTERCOURSE and/or ORAL SEX, in violation of s. 847.0133, Fla. Stat." At trial, S.A. and V.A. testified about numerous sexual acts that Valdes performed on them, or that they performed on him, including oral sex. According to V.A., she learned how to perform some of these acts by watching pornography:
Q. While this was happening, were you doing anything or was he doing anything in addition or else with you?
A. Like there was porn on the cable.

*685 Q. When you say porn, could you say what you mean?
A. Naked people having sex and stuff.
Q. And was it your idea to watch that?
A. No, it was his idea.
Q. Would he say anything to you about that?
A. Yeah, like to do the same things they were doing on television.
Q. And would you try to do that?
A. Yes. He would tell me to do what they were doing so I would try to do it.
Q. And what about his actions when he was performing on you did it have anything to do with the video you were watching?
A. Yes.
Q. Now, do you remember if while you were watching these pornographic movies was the video from [sic]?
A. Once he rented a video tape and then it was on cable.
Similarly, S.A. testified that she learned how to perform various sex acts by watching pornography at Valdes' direction:
Q. How did you know what to do when he put his penis in your mouth?
A. He explained to me how.
Q. Did he ever show you anything to demonstrate how to do that?
A. Yes.
Q. What did he show you?
A. He rented porn videos.
Q. What did you see on those porn videos?
A. Sex.
Q. What specifically? Who was involved?
A. It was all kinds of things, there was [sic] lesbians, a guy and a girl, it was everything.
Q. When you say sex, tell me what they were doing.
A. It was intercourse, oral everything.
Q. Did he indicate to you at all what you should be doing in reference to what you saw in the television?
A. Yes.
Q. What did he say?
A. He said that is how you are suppose [sic] to do it.
Q. Before you saw these video and were involved with what the defendant was telling you did you have any idea how to do that type of thing?
A. No.
Unlike the testimony in Beber v. State, 853 So.2d 576 (Fla. 5th DCA 2003), reversed on other grounds, 887 So.2d 1248 (Fla.2004), we believe this testimony was sufficient to support a conviction under section 847.0133.
In Beber, the child victim could not identify the obscene magazines that had been shown to him at trial as the ones that had been shown to him previously. The child also gave inconsistent testimony as to the substance of that material. Moreover, some videotapes which the child had seen, but were not introduced at trial, had been reviewed by a police investigator who determined that they were not obscene.
In this case, both S.A. and V.A. gave sufficiently detailed descriptions of the pornographic content of the materials Valdes had shown them. Not only that, both testified that they learned how to perform the various sex acts they were forced to perform by watching these videos. Although none of the videotapes that V.A. and S.A. were forced to watch were introduced into evidence at trial, we find their testimony sufficiently descriptive and detailed for a jury to find that the material was obscene.
*686 Accordingly, Valdes' convictions and sentences are affirmed.