944 So.2d 1207 (2006)
Russell A. DORSETT, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-416.
District Court of Appeal of Florida, Third District.
December 20, 2006.
*1208 Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Frederika Sands, Assistant Attorney General, for appellee.
Before COPE, C.J., and GERSTEN, GREEN, FLETCHER, RAMIREZ, WELLS, SHEPHERD, SUAREZ, CORTIñAS, and ROTHENBERG, JJ.

EN BANC
ROTHENBERG, Judge.
The defendant, Russell A. Dorsett, appeals his convictions for the sale of cocaine and marijuana, arguing that the introduction of a prior drug transaction, allegedly committed by the defendant, was error requiring a new trial. As we conclude that the prior drug transaction was properly admitted, or in the alternative, harmless error, we affirm.
The defendant was charged with sale of cocaine, sale of marijuana, and carrying a concealed firearm. These charges stem from a hand-to-hand drug transaction that was witnessed by Detective Daniel Fernandez, who was acting as the "eyeball" or surveillance officer during a drug surveillance of a liquor store parking lot. It is undisputed that the purchaser in this hand-to-hand transaction was Denise Edwards.
The evidence submitted is as follows. The Tactical Narcotics Team ("TNT") of the Miami-Dade Police Department was conducting an operation in which the target location was the parking lot of a liquor store. Detective Fernandez, who was acting as the "eyeball," testified that he was approximately 200 feet from the parking lot, he used binoculars during his surveillance, and had a fairly unobstructed view of the defendant and of the approximately ten other individuals in the parking lot. During his two-hour surveillance, Detective Fernandez, testified that he witnessed the defendant conduct two hand-to-hand transactions, one involving a "man" and *1209 the other involving Ms. Edwards, occurring approximately fifteen minutes apart. He described how in each transaction, the purchaser would approach the defendant. The defendant would then walk over to a garbage can, retrieve a plastic sandwich baggie from the garbage can, take an unknown item out of the sandwich baggie, walk back to where the person was waiting, and hand the item to the person in exchange for currency. As each purchaser approached the defendant, Detective Fernandez immediately provided a detailed description of the purchaser to a take-down unit stationed nearby, and these purchasers were then arrested by the take-down unit as they left the scene. After each transaction was completed, Detective Fernandez also provided a description of the seller. After Ms. Edwards made her purchase, she was arrested, searched, and found to be in possession of cocaine and marijuana.
Following the transaction involving Ms. Edwards, someone who was acting as a "lookout" yelled "jump out, shut the hole," to alert the seller to the presence of law enforcement. After receiving this warning, Detective Fernandez saw the defendant remove a revolver from his waistband, place it on the tire of a van, and walk towards another vehicle parked nearby. The defendant was arrested minutes later after Detective Fernandez identified him as the person who had conducted the hand-to-hand transactions he had observed.
Ms. Edwards, who was called as a defense witness, testified that, on the day in question, she drove up to the liquor store where six men were sitting under a tree. When she inquired about purchasing some drugs, three of the six men approached her. She testified that she bought three bags of marijuana from a man with braids in his hair and two bags of cocaine from the other two men. Ms. Edwards claimed she did not purchase any drugs from the defendant.
The jury found the defendant guilty of selling cocaine and marijuana to Ms. Edwards, and not guilty of possession of a concealed firearm. The defendant appeals the trial court's ruling permitting the State to introduce evidence of the prior hand-to-hand transaction without providing ten days notice pursuant to section 90.404(2)(c)1, Florida Statutes (2003).
Prior to trial, the defense moved in limine to preclude the State's introduction of evidence regarding four uncharged hand-to-hand transactions which occurred during the same surveillance of the parking lot. The five transactions (the charged transaction and four uncharged transactions) took place within a span of approximately an hour and a half to two hours, with the charged crime being the last of the five transactions. Defense counsel objected to the introduction of the uncharged drug transactions because the State failed to file the required ten-day notice of its intent to introduce Williams[1] rule evidence or evidence of other crimes.[2] § 90.404(2)(c)1, Fla. Stat. (2003). While the State conceded to committing an inadvertent discovery violation by failing to provide the defense with the names of the four other purchasers, it argued that no Williams rule notice was required as the uncharged crimes did not qualify as Williams rule evidence.
In support of the State's argument that no notice was required, the State relied *1210 upon D.M. v. State, 714 So.2d 1117 (Fla. 3d DCA 1998). The State argued that the four uncharged hand-to-hand transactions were admissible because they were inextricably intertwined with the charged offenses, and explained that it was not planning on calling the four other purchasers to testify at trial and did not intend to go into the specifics of the uncharged crimes. The State sought to introduce this evidence through Detective Fernandez to establish why he was observing the defendant for more than just a few minutes and to explain why no drugs were found in the garbage can or on the defendant.
Regarding the discovery violation, the State argued that, while the names of the four other purchasers had not been provided, the case numbers for each had been listed in the police offense incident report, which was provided to the defendant in discovery. The trial court found that the failure to provide the defense with the names and addresses of the four purchasers of the uncharged crimes was a substantial, but inadvertent, discovery violation. However, in an attempt to remedy the violation, the trial court offered to continue the trial, and to charge the continuance to the State. The State responded that it would immediately provide the defense with two of the four names and the other two names would be provided within five days. When the trial court announced it was granting a one week continuance, defense counsel requested an opportunity to talk to the defendant in order to obtain his position on the State-charged continuance. After consulting with the defendant, defense counsel stated, "I discussed the matter with Mr. Dorsett and he wants to go forward today. Even though we had this problem with the late discovery, of course if the prosecutor decides to call any of these people, I want an opportunity to talk to them before." Thereafter, the following colloquy was conducted:
THE COURT: Mr. Dorsett, do you understand I am willing to continue this case? I am willing to continue this case so that your attorney can deposethat means take statements under oath from these four other people that allegedly participated in a sell with you. Do you understand that I will grant the continuance and I will be more than happy to do that? At the same time [defense counsel] tells me you have made the decision on your own to go ahead with the trial today, knowing that [defense counsel] will not have the opportunity to depose those people; is that also correct?
THE DEFENDANT: Yes, sir.
While the discovery violation was clearly resolved, the record is not as clear with respect to the trial court's pretrial ruling regarding the admissibility of the four uncharged transactions. Following jury selection, however, the issue was re-addressed. The State argued that, if the officer's observations during his hour and a half surveillance of the defendant were precluded, this would result in an incomplete picture of the State's case and would cause jury confusion. Specifically, the State argued:
Judge, I think you leave this jury with a misunderstanding of why the officers were there for an hour and a half in observing the defendant and the description given of the defendant, why they were just observing him, why they were focusing on him, if they just engaged in a quick hand-to-hand transaction. I think the detective for two hours saw the defendant and was focusing on the defendant because he was the one engaging in the hand-to-hand transaction[s]. There were numerous people on the scene, Judge, that it would lead the *1211 jury to the conclusion, hey, maybe he misidentified, why would he be focusing on the defendant and not focused on other people. . . .
. . .
. . . there has to be an explanation to the jury as to why this detective focused on the defendant as opposed to numerous [] other people on the scene for over an hour and a half, and watching his every move and not other people at the scene. Otherwise it looks like the jury can look at one hand-to-hand transaction, it happened in two seconds. That's it. They're going to be left wondering why was the detective focusing on the defendant and not the twenty other people on the scene.
Based upon the trial court's reading of our opinion in D.M. v. State, 714 So.2d 1117 (Fla. 3d DCA 1998), it initially ruled that only the third and fourth uncharged hand-to-hand transactions were admissible because they took place within fifteen minutes of the charged offense, thereby linking them in time and in circumstances. The trial court concluded that notice was not required pursuant to section 90.404(2)(c)1 as the uncharged crimes were not Williams rule evidence, but rather, relevant evidence inextricably intertwined with the charged offenses. Upon learning, however, that the third transaction took place more than fifteen minutes before the charged offense involving Ms. Edwards, the trial court further limited the evidence to the fourth uncharged crime, stating:
I am going to allow the one prior sell to be admitted. Not because the Court believes it's considered to be other criminal offense, rather it is part of the entire context of why the officer was there. The other sells [sic] being outside of fifteen minutes, the Court finds to be irrelevant and out[weighed] by the unfair [prejudice to] the defendant.
When the State offered the evidence of the fourth hand-to-hand transaction at trial, defense counsel renewed his objection which was overruled by the trial court:
The Court once again finds that the evidence of the other event, the other sell [sic], shows the general context in which the alleging [sic] criminal action in this matter, this case before the Court occurred and it's just part of the entire context and limited in time and it's part of the factual context in which the case that is charged is being tried. It is being admitted because it is relevant and not under the Williams Rule.

D.M. v. STATE
The procedural posture of the instant case and subsequent appeal is somewhat unusual. After the initial oral argument, this court set the case for hearing en banc and allowed the parties to file supplemental briefs addressing whether this court erred when it found that the collateral crimes evidence was properly admitted in D.M., because the offenses were committed during a single criminal episode.
The defendant in D.M. was charged with one hand-to-hand sale of cocaine. At trial, the State introduced three prior uncharged hand-to-hand drug transactions by D.M., made within fifteen minutes of the charged offense. This court concluded that the evidence was properly admitted as collateral crimes evidence under two distinct theories: (1) that the uncharged hand-to-hand transactions were properly admitted as relevant evidence pursuant to section 90.402 because they were committed in a single criminal episode; and (2) that they were properly admitted as relevant evidence pursuant to section 90.402 because the evidence was inextricably intertwined with the crime charged. Under either theory, since the evidence was admitted as relevant evidence pursuant to section *1212 90.402, rather than as "other criminal offenses" pursuant to section 90.404, the ten-day notice requirement did not apply.[3] It is this first finding, that the offenses were admitted during a single criminal episode, to which this court encouraged argument and reconsideration in our en banc consideration in the instant case. After reviewing the matter en banc, this court declined to recede from that portion of D.M. wherein we held that the collateral crimes evidence was admissible because committed in a single criminal episode. Our failure to recede from the portion of D.M. under review, however, is of no importance since we conclude that the complained-of evidence in the instant case was properly admitted as (1) relevant evidence that was inextricably intertwined pursuant to section 90.402, and/or (2) evidence relevant to a material issue at trial.

THE LAW IN GENERAL
Generally, all relevant evidence is admissible, unless precluded by law. See § 90.402, Fla. Stat. (2003). Relevant evidence is defined as "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2003). Relevant evidence, however, "is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2003). Thus, the prerequisite to admissibility is relevancy.
Evidence of bad acts not included in the charged offenses is generally referred to as "collateral crimes evidence." Collateral crimes evidence includes (1) similar fact evidence, which is governed by section 90.404, and is commonly referred to as "Williams rule evidence,"[4] and (2) all other relevant evidence, admissible pursuant to section 90.402. Similar fact evidence under section 90.404 is evidence totally unrelated to the charged offenses (and is referred to in the federal system as "extrinsic evidence") and is admissible to prove a material fact in issue, such as motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Because 90.404 evidence is extrinsic (unrelated to the charged offense), the State is required to provide the defendant with notice of its intent to rely on this evidence at trial. Notice provides the defendant with an opportunity to challenge the admissibility of the evidence and to prepare a defense, which may include additional discovery. See Charles W. Ehrhardt, Florida Evidence § 404.9 (2006); see also Robertson v. State, 829 So.2d 901, *1213 907-08 (Fla.2002). All other relevant evidence falls under section 90.402.
Some of the evidence that generally falls into the category of relevant evidence under section 90.402, is evidence that is inextricably intertwined with the charges being prosecuted.[5] Evidence is inextricably intertwined if the evidence is necessary to (1) "adequately describe the deed," Smith v. State, 866 So.2d 51, 62 (Fla.2004)(emphasis added); Gray v. State, 873 So.2d 374 (Fla. 2d DCA 2004); Canion v. State, 793 So.2d 80, 81 (Fla. 4th DCA 2001); (2) provide an intelligent account of the crime(s) charged, Vail v. State, 890 So.2d 373, 376 (Fla. 3d DCA 2004); Burgos v. State, 865 So.2d 622, 624 (Fla. 3d DCA 2004); Austin v. State, 500 So.2d 262, 265 (Fla. 1st DCA 1986); (3) establish the entire context out of which the charged crime(s) arose, Hunter v. State, 660 So.2d 244, 251 (Fla.1995)("Among the purposes for which a collateral crime may be admitted is establishment of the entire context out of which the criminal action occurred."); Foster v. State, 679 So.2d 747, 753 (Fla.1996); Griffin v. State, 639 So.2d 966, 970 (Fla.1994); Ruffin v. State, 397 So.2d 277, 280 (Fla.1981), receded from on other grounds, Scull v. State, 533 So.2d 1137 (Fla.1988); Vail, 890 So.2d at 376; or (4) adequately describe the events leading up to the charged crime(s), Griffin, 639 So.2d at 970; Vail, 890 So.2d at 376.
Relevant evidence admitted under section 90.402 does not require notice. See Hunter, 660 So.2d at 251 ("Inseparable crime evidence is admitted not under 90.404(2)(a) as similar fact evidence but under section 90.402 because it is relevant."); Griffin, 639 So.2d at 968 (holding that "evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence," and concluding that the evidence was admissible under section 90.402 because the evidence was relevant); Kelly v. State, 552 So.2d 1140, 1141 (Fla. 5th DCA 1989)(holding that evidence of aggravated assault committed the evening before the crime charged is admissible as inseparable crime evidence, therefore, the notice requirement of section 90.404 is inapplicable); Tumulty v. State, 489 So.2d 150 (Fla. 4th DCA 1986)(holding that "inseparable crime evidence is admissible under Section 90.402 because it is relevant" and, "[t]herefore, there is no need to comply with the ten-day notice provision").
Thus, relevant evidence is generally admissible except where prohibited by law, unless the probative value is outweighed by the prejudicial effect. Similar fact evidence of other crimes requires notice pursuant to section 90.404(2)(c)1, while all other relevant evidence, even if it relates to uncharged criminal acts, does not require notice. The issue is relevancy.

THE EVIDENCE WAS PROPERLY ADMITTED AS COLLATERAL CRIMES EVIDENCE
We conclude that evidence of the prior uncharged hand-to-hand transaction was properly admitted pursuant to section 90.402 as relevant evidence, evidence which was inextricably intertwined with the crime charged and offered to establish the entire context of events leading up to the charged offense, the reliability of Detective Fernandez's identification of the defendant as the seller, and to establish the absence of mistake. Thus, no notice was required. Because the evidence tended to prove a material fact in dispute and the trial court limited the State to the introduction of only one of the prior four *1214 transactions, the prejudicial effect of the evidence was substantially outweighed by its probative value.
The prior hand-to-hand transaction was inextricably intertwined with the charged offense because the reliability of Detective Fernandez's identification of the defendant as the seller was a material issue in dispute. The defendant argued that there were several individuals in the parking lot at the time the transaction took place, the detective was 200 feet away using binoculars, and he was, therefore, mistaken. In support of his defense, the defendant asked the jury to consider the fact that no drugs were found on his person and Ms. Edwards had testified that the defendant was not the person who sold her the drugs. The prior hand-to-hand transaction was, therefore, necessary to establish the identity of the seller. The collateral crimes evidence explained why Detective Fernandez was focusing his attention on the defendant when there were many other individuals in the parking lot, why no drugs were found on the defendant's person, and why the detective was not mistaken. Had the prior hand-to-hand transaction not been introduced, the jury would have been left with the mistaken impression that the detective, who had been surveilling the entire area and all of the individuals for two hours and who witnessed what he believed was a drug transaction between the defendant and Ms. Edwards, was only surveilling the area for a short period of time. The ability of the detective to explain why he had directed his surveillance on the defendant and the degree of his focus was critical to the State's case and was necessary to establish the reliability of the detective's identification of the defendant as the seller.
Our finding that the collateral crimes evidence was inextricably intertwined with the charged offenses is supported by prior case law and precedent throughout the state. In D.M., with facts strikingly similar to the facts in the instant case, we concluded that the hand-to-hand transactions were properly admitted as they were relevant to a material issue in dispute and were inextricably intertwined with the charged offenses.
In D.M., D.M. and A.E. were arrested and charged with sale of cocaine and possession with intent to sell an "inventory" of packaged-for-sale cocaine rocks which were recovered from a nearby utility room. At trial, the State was permitted to introduce evidence of three additional uncharged hand-to-hand transactions which occurred within fifteen minutes prior to the charged offenses. An officer testified at trial that he observed four separate individuals ("purchaser") approach D.M. and A.E., hand money to A.E., who then passed the money to D.M. Each purchaser would wait on the sidewalk while A.E. went to a utility room. After A.E. returned from the utility room, the officer testified that he saw A.E. hand an object to each purchaser, who left immediately thereafter. After witnessing the fourth transaction, the officer relayed a take-down signal and the person involved in the fourth transaction was arrested, searched, and found to be in possession of a rock of cocaine.
In D.M., this court held:
[U]nder the facts of this case, the testimony about the first three transactions was inseparable crimes evidence, that is, "evidence which is inextricably intertwined with the crime charged. . . ." Griffin v. State, 639 So.2d 966, 968 (Fla. 1994). "It is admissible under section 90.402 because `it is a relevant and inseparable part of the act which is in issue. . . . [I]t is necessary to admit the evidence to adequately describe the deed.'" Id. (quoting Charles W. Ehrhardt, *1215 Florida Evidence § 404.17 (1993 ed.))(other citations omitted). . . .
Here, both respondents were charged with possession of the drug inventory which was inside the utility room. In order to prove this offense, the State was required to show dominion and control by the respondents over the drugs in the utility room. During the fifteen-minute surveillance, the officer observed four transactions and four trips to retrieve objects from the utility room. The evidence of the trips to and from the utility room was inextricably intertwined with the evidence of the sidewalk transactions. The evidence was properly admitted.
D.M., 714 So.2d at 1119-20. Neither the dissent nor the defendant dispute the admissibility of the uncharged hand-to-hand transactions in D.M. as inextricably intertwined with evidence of the charged offense. The defendant and the dissent, however, attempt to distinguish the instant case from D.M. arguing that the evidence of the uncharged hand-to-hand transactions in D.M. were inextricably intertwined as it was necessary to establish D.M.'s dominion and control over the drugs found in the utility room. We find that the collateral crimes evidence in the instant case was equally necessary to establish the detective's degree of focus on the defendant, to explain why no drugs were found on the defendant, and to establish the reliability of his observations and identification of the defendant.
The officer testified that he observed the charged transaction from 150 to 200 feet away through binoculars, there were approximately ten individuals in the immediate vicinity, and the defense in this case was that the officer was mistaken as to the identity of the seller. An identification made by an officer, who was specifically watching the defendant because of his behavior, is certainly more reliable than the sanitized version the defendant and the dissent claim should have been presented to the jury: that after an hour and a half and after observing ten individuals, the officer witnessed, with the assistance of binoculars, a brief hand-to-hand transaction by the defendant who was 150 to 200 feet away. Given these facts, without being able to explain the entire context and circumstances leading to the charged transaction, the jury would not have been presented with a true understanding regarding the officer's focus and attention on the defendant. The collateral crimes evidence was, therefore, inextricably intertwined and relevant to the only material issue in dispute  whether the officer was mistaken as to the identity of the seller. The evidence that, in conducting each transaction, the defendant appeared to be retrieving the drugs from a nearby garbage can was also relevant to explain why, if the defendant was the seller, no drugs were found on him. Thus, we conclude, as this court concluded in D.M., that the evidence was properly admitted as inextricably intertwined and as relevant evidence pursuant to section 90.402.
In Randle v. State, 820 So.2d 418 (Fla. 3d DCA 2002), this court also concluded that the arresting officer's testimony, that he had observed the defendant engage in a drug transaction a week prior to the charged offense, was properly admitted as inseparable crimes evidence because without the inclusion of the collateral crimes evidence, the officer's actions would have made no sense. Id. at 419.
Likewise, in Austin v. State, 500 So.2d 262 (Fla. 1st DCA 1986), the Fifth District held that the collateral crimes evidence was properly admitted as inextricably intertwined. The court explained that the evidence helped "cast light on the character of the crimes for which Austin was *1216 prosecuted," because it was relevant as to Austin's motive for committing the crimes and because the witness' "testimony would have been greatly diminished if he had been prevented from testifying as to why he and Austin were together when they discovered the victim in this case." Id. at 265; see also Vail v. State, 890 So.2d 373, 376 (Fla. 3d DCA 2004). Similarly, in the instant case, had the collateral crimes evidence not been admitted, Detective Fernandez's testimony would have been greatly diminished as he would not have been able to explain that the focus of his investigation had coalesced upon the defendant and why.
In Vail, the defendant appealed the denial of his motion in limine to exclude any mention of a gun found in the defendant's van during the defendant's trial for possession of drugs. This court found the collateral crimes evidence was properly admitted as inextricably intertwined because without its introduction, the defendant's statements and admission of guilt as to the charged offense would have been confusing to the jury.
The collateral crimes evidence in each of these cases was admissible as inextricably intertwined because the evidence was relevant to a material fact or issue at trial as it cast light on the character of the crime(s) being prosecuted.
The uncharged hand-to-hand transaction admitted in the instant case was equally admissible as inseparable or inextricably intertwined evidence and relevant to explain the entire context of events including: why the surveillance officer watched the defendant for such a lengthy period of time, why his focus was on the defendant, why no drugs were found on the defendant's person, and why the officer was not mistaken regarding the identity of the seller.
THE EVIDENCE WAS ALSO ADMISSIBLE BECAUSE IT WAS RELEVANT TO A MATERIAL FACT AT ISSUE
To be admissible under section 90.402, there is no requirement that the evidence be inextricably intertwined. The only prerequisite is that the evidence be relevant to a material fact at issue. For example, in Foster v. State, 679 So.2d 747 (Fla.1996), the Florida Supreme Court held that "[e]vidence of other crimes or acts is admissible if it is found to be relevant for any purpose, save that of showing bad character or propensity." Foster, 679 So.2d at 753. In determining that the collateral crimes evidence was properly admitted in Foster, the Court concluded that the collateral crimes evidence was relevant because it "showed a continuing chain of chronological events" and "[a]dditionally, this evidence is relevant to show Foster's motive and, ultimately, his intent." Id.
In Valdes v. State, 930 So.2d 682 (Fla. 3d DCA 2006), this court concluded that, in the prosecution of Valdes for sexual battery on a minor and other related offenses, the trial court did not abuse its discretion in admitting evidence concerning prior domestic violence in the home because the evidence was relevant to explain why the children did not disclose the abuse for approximately five years.
Likewise, in Minick v. State, 560 So.2d 386, 387 (Fla. 3d DCA 1990), the State argued that testimony regarding the defendant's prior purchase of drugs from the eyewitnesses to the murder was properly admitted because it was relevant to demonstrate the defendant's knowledge of the area and to establish his motive for the murder. This court, in affirming the conviction, noted that "[t]he test for admissibility of evidence of collateral crimes is relevancy," Id. at 387 (citing Heiney v. State, 447 So.2d 210 (Fla.1984)), and "[e]vidence *1217 of other crimes is relevant if it casts light on the character of the crime for which the accused is being prosecuted, such as when it shows either motive, intent, absence of mistake, or identity." Minick, 560 So.2d at 387 (citing Ruffin v. State, 397 So.2d 277 (Fla.1981), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981))(citing Williams v. State, 110 So.2d 654 (Fla.1959)).
In Williamson v. State, 681 So.2d 688 (Fla.1996), the defendant was charged with first degree murder, armed burglary, extortion, three counts of attempted murder, five counts of armed kidnapping, and four counts of armed robbery. During the prosecution of these offenses, a witness testified that the defendant had previously killed a four-year-old child with a baseball bat. The Florida Supreme Court found that this collateral crimes evidence was properly admitted because it was relevant to the issue of the witness' credibility, which was a material issue upon which the State's case depended, because it explained why the witness had concealed the defendant's identity for approximately three years. The witness testified that he was afraid of the defendant because he was aware the defendant had killed a baby. Id. at 695-96; see also Miller v. State, 667 So.2d 325, 328 (Fla. 1st DCA 1995)("Evidence of other crimes, whether factually similar or dissimilar to the charged crime, is admissible if the evidence is relevant to prove a matter of consequence other than bad character or propensity.")(quoting Williams v. State, 621 So.2d 413, 414 (Fla. 1993)). The Miller court additionally stated:
Such evidence may be admissible to disprove a defendant's theory of defense or to disprove a defendant's attempt to explain the intent of the defendant. In Williams, supra, collateral crime evidence was relevant to rebut evidence that the victim had consensual sex with the defendant in exchange for drugs. In Wuornos v. State, 644 So.2d 1000 (Fla. 1994), the collateral crime evidence was relevant to rebut the defendant's claim of self defense in a homicide action.
Miller, 667 So.2d at 328. In Damren v. State, 696 So.2d 709 (Fla.1997), the Florida Supreme Court also concluded that a theft committed by the defendant earlier that day was admissible under section 90.402 as it was relevant to whether the defendant was too intoxicated to form the requisite specific intent to commit the charged burglary. Id. at 711.
As the evidence was offered to prove a material fact in dispute, and because it provided the trier of fact with a complete picture of the events in question, we conclude the evidence was properly introduced as relevant evidence under section 90.402, Florida Statutes (2003). See Williamson, 681 So.2d at 695 (holding section 90.404(2)(a) inapplicable where evidence was not admitted to show the defendant had a propensity to commit the crime charged based on the fact he had committed a similar crime; rather evidence was relevant to establish the credibility of a material witness and to provide the jury with the full context of the criminal episode). Here, as in Williamson, Detective Fernandez's credibility was in dispute. The collateral crimes evidence was admitted to establish the reason why he was not mistaken in identifying the defendant as the seller. See United States v. McLean, 138 F.3d 1398, 1403 (11th Cir.1998)(holding that evidence of criminal activity other than the charged offenses is not 404(b) evidence "if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense")(emphasis added); United *1218 States v. Kloock, 652 F.2d 492, 495 (5th Cir.1981)(holding that introduction of a false driver's license found in the defendant's possession at the time of his arrest for importation of cocaine and possession of cocaine with intent to distribute was proper as the license was relevant to complete the story of the charged crime); Hall v. State, 403 So.2d 1321 (Fla.1981)(holding that evidence of a second murder was admissible to prove identity and to show the general context in which the criminal action occurred).

THE TRIAL COURT'S EXCLUSION OF ADDITIONAL HAND-TO-HAND TRANSACTIONS
While there were four uncharged hand-to-hand transactions in the instant case, the trial court only allowed the last of the four uncharged transactions to be introduced, misinterpreting our holding in D.M. as limiting the admissibility of collateral crimes evidence to a fifteen minute time interval. We, however, never intended to set an arbitrary time limit. We, therefore, clarify our holding in D.M. as limiting the admissibility of relevant evidence pursuant to section 90.402, based upon a section 90.403 analysis, which requires that the probative value of such evidence not be outweighed by its prejudicial effect. The timing of the events is simply one of the factors the trial court may consider in weighing the probative value against its prejudicial effect.

CONCLUSION
As the trial court concluded that the evidence of a prior drug transaction was relevant in the prosecution of Dorsett's charged drug transaction, and there is certainly sufficient evidence to support the trial court's finding, we cannot find, as we would be required to find before reversing the jury's verdict, that the trial court abused its discretion in permitting its introduction at trial. See Heath v. State, 648 So.2d 660, 664 (Fla.1994)(confirming that a "trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion")(citing on Hardwick v. State, 521 So.2d 1071, 1073 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988)); Irving v. State, 627 So.2d 92, 94 (Fla. 3d DCA 1993)("A trial court has wide discretion concerning the admissibility of evidence, and a ruling on admissibility will not be disturbed unless there has been an abuse of discretion.").
Affirmed.
GERSTEN, WELLS, SHEPHERD, SUAREZ and CORTIÑAS, JJ., concur.
COPE, C.J. (dissenting).
Respectfully, the evidence of the prior uncharged hand-to-hand drug transaction was not admissible as inseparable crimes evidence, nor was it admissible as Williams rule evidence[6] under paragraph 90.404(2)(a), Florida Statutes (2003).
The evidence does not qualify as inseparable crimes evidence because it is possible to give a perfectly adequate account of the crime to the jury without making reference to the earlier uncharged hand-to-hand drug sale. It is not proper Williams rule evidence because, under the circumstances present here, the prior hand-to-hand drug sale is not relevant to any material fact in issue in this case.

I.
Defendant-appellant Russell A. Dorsett was convicted of selling cocaine and marijuana to Denise Edwards in a hand-to-hand *1219 transaction.[7] The defense at trial was mistaken identity. Police Detective Fernandez, who was the surveillance officer, testified that the defendant was the seller. Ms. Edwards was called as a witness by the defense and testified that the defendant was not the seller.[8]
Prior to trial, the defense became aware that the State intended to elicit evidence from Detective Fernandez, the surveillance officer, that the defendant had engaged in four uncharged hand-to-hand drug transactions during the two hours prior to the sale charged in this case. The State relied on this court's decision in D.M. v. State, 714 So.2d 1117 (Fla. 3d DCA 1998), as authority for offering this evidence. By motion in limine the defense maintained that the evidence should be excluded. The defense argued that D.M. was factually distinguishable and inapplicable to the present case. Relying on D.M., the court ruled that the surveillance officer could testify about one uncharged hand-to-hand transaction which occurred fifteen minutes before the charged hand-to-hand sale in this case.[9]
The case proceeded to trial. The officer explained the surveillance procedure he employed. He testified about the one prior uncharged hand-to-hand transaction which the trial court permitted. The officer identified the defendant as the seller in both transactions.
The defense called Ms. Edwards as a witness, who testified that the defendant was not the one who sold the drugs to her. The defendant was convicted and appealed to this court.
In the defendant's initial brief, the defendant argued that the trial court erred by allowing evidence of the uncharged prior sale. The defense contended that D.M. should be viewed as applying only to evidence of an uncharged crime which is inextricably intertwined with a charged crime. After the panel heard oral argument, this court granted rehearing en banc to consider the question whether the decision in D.M. should be receded from in part.
The majority opinion in this case holds that the prior uncharged drug sale was admissible as inseparable crimes evidence, and to explain the entire context of events leading up to the charged offense. Majority opinion at 1213-14. The majority opinion also concludes that evidence of the uncharged drug sale was admissible to establish the reliability of the surveillance officer's identification of the defendant as the seller in the charged drug sale, and to establish that the surveillance officer was not mistaken in his identification of the defendant. Id. The majority opinion adheres to the D.M. decision but clarifies that D.M. does not limit the admissibility of collateral crimes evidence to a fifteen minute time interval. Id. at 1218.
In my view, the majority opinion misapprehends the controlling case law on point.

II.
When evidence of prior crimes is wrongly admitted, "it is `presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of *1220 the crime charged.'" Keen v. State, 504 So.2d 396, 401 (Fla.1987) (citation omitted). Evidence of uncharged prior crimes can only be admitted if it satisfies certain specifically defined criteria.
The evidence in this case does not qualify as inseparable crimes evidence, also known as inextricably intertwined evidence.
Professor Ehrhardt has summarized the law of inseparable crimes as follows:
Occasionally when proving that an act, deed, or crime occurred, the act will be so linked together in time and circumstance with the happening of another crime that the one cannot be shown without proving the other. For example, if a defendant is charged with a sexual battery which occurred after a violent struggle with the victim, evidence of the struggle would be admissible even though it shows the commission of a battery. Evidence that the defendant forcibly removed jewelry from the victim during the struggle and took it from the victim's home would be admissible even though it showed the commission of a larceny. There is general agreement that this evidence is admissible.
Charles W. Ehrhardt, Florida Evidence § 404.17, at 261 (2006) (footnotes omitted).
Professor Ehrhardt goes on to say:
The Florida courts have reasoned that the evidence of an inseparable crime should be admitted when it is "inextricably intertwined" with the underlying crime and "where it is impossible to give a complete or intelligent account of the crime charged without reference to the other crime."
Id. at 261-63 (footnotes omitted; emphasis added).
Turning now to the principle applicable to this case, Professor Ehrhardt tells us what evidence does not qualify:
When there is a clear break between the prior conduct and the charged conduct or it is not necessary to describe the charged conduct by describing the prior conduct, evidence of the prior conduct is not admissible on this theory.
Id. at 263 (footnote omitted; emphasis added).
The sentence just quoted is dispositive here, and is fatal to the State's position. In the first place, there was a clear break between the two transactions. The detective stated that he saw the defendant sell drugs to a man fifteen minutes before he sold drugs to Ms. Edwards. Since there was a clear break, the two drug sales do not qualify as inseparable crimes.
In the second place, it is perfectly possible to describe the crime with which the defendant was chargedthe sale to Ms. Edwardswithout describing the earlier sale. When this matter was pending before the trial court, the judge asked the prosecutor whether the charged sale could be proved without reference to the uncharged sale. The prosecutor's answer was yes. With that concession, the State necessarily acknowledged that the prior sale at issue in this case was not inseparable crime or inextricably intertwined evidence. See Charles W. Ehrhardt, Florida Evidence, § 404.17 at 263-64 & n. 5 (citing Thomas v. State, 885 So.2d 968, 975 (Fla. 4th DCA 2004); Gray v. State, 873 So.2d 374, 377 (Fla. 2d DCA 2004); Burgos v. State, 865 So.2d 622, 624 (Fla. 3d DCA 2004)); see also Canion v. State, 793 So.2d 80 (Fla. 4th DCA 2001); Griner v. State, 662 So.2d 758 (Fla. 4th DCA 1995).

*1221 III.
The majority opinion states that the uncharged sale was relevant "to establish the entire context of events leading up to the charged offense. . . ." Majority opinion at 1213. Regarding "context," Professor Ehrhardt has explained:
The Florida Supreme Court has admitted evidence of other crimes "to show the general context in which the criminal action occurred." Although it is not clear when the court was suggesting that evidence is admissible to prove the "general context," it seems likely the court was referring to evidence of inseparable crimes as discussed in this section. If the concept is given much broader interpretation, it could well swallow the rule.
Charles W. Ehrhardt, Florida Evidence § 404.17, at 264 (footnotes omitted).
Professor Ehrhardt's observation is correct. Every criminal prosecution has a context which must be established for the jury. If in establishing that general context it is routinely permissible to introduce evidence of uncharged crimes, then the rule would be one of general admissibility of uncharged crimes, rather than a rule of restricted admissibility.
As suggested by Professor Ehrhardt, the correct rule is that for uncharged crimes evidence to be admissible to explain the general context, the evidence must satisfy the test for inseparable crimes evidence. See Griffin v. State, 639 So.2d 966, 968-69 (Fla.1994) ("The manner in which the car keys were taken was inextricably intertwined with the theft of the automobile, one of the charges before the jury. The testimony was necessary to establish the entire context out of which the crime arose.") That test was not met here.

IV.
For the reasons already explained, this court should clarify, or recede in part from, D.M. v. State, 714 So.2d 1117 (Fla. 3d DCA 1998). Although I wrote D.M., I am now convinced that part of its reasoning is incorrect.
D.M. and a codefendant, A.E., were charged with a hand-to-hand sale of a cocaine rock to a customer. They were also charged with possession with intent to sell an inventory of packaged-for-sale cocaine rocks found in a nearby utility room.
At trial, the surveillance officer testified about the sale of the single cocaine rock. The officer also testified about three uncharged sales which had occurred in the preceding fifteen minutes.
This court upheld the introduction of the evidence of the uncharged sales. The D.M. panel did so for two separate reasons.
1. The correct part of the analysis is that the uncharged sales were relevant to demonstrate the respondent's dominion and control over the drug inventory in the utility room.
During the fifteen-minute surveillance, the officer observed four transactions and four trips to retrieve objects from the utility room. The evidence of the trips to and from the utility room was inextricably intertwined with the evidence of the sidewalk transactions.
Id. at 1119-20. That analysis remains correct.
2. However, the D.M. decision also contains another independent (and incorrect) analysis for treating the evidence as admissible. The problematic portion of the D.M. decision ruled that when there is a series of hand-to-hand drug sales to different customers, those sales are inseparable crimes  even though there is a clear *1222 break in time between the sales. The D.M. opinion states in part:
Customers one through three had not been arrested, and so D.M. and A.E. were charged only with sale to customer four. D.M. contends that the testimony regarding customers one through three was testimony of other crimes, and should have been excluded for lack of the ten-day notice. The trial court overruled the objection.
We conclude that the objection was correctly overruled. Analyzing Federal Rule of Evidence 404(b), one court has said:
The extrinsic acts rule is based on the fear that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense. In the usual case, the "other acts" occurred at different times and under different circumstances from the crime charged. The policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become "other acts" because the defendant is indicted for less than all of his actions.

United States v. Aleman, 592 F.2d 881, 885 (5th Cir.1979) (citation omitted). Here, the surveillance officer observed a fifteen-minute episode of hand-to-hand street drug sales, after which D.M. was arrested. We do not think that the first three sales qualify as "other criminal offenses," § 90.404(2)(a), Fla. Stat., for which the ten-day notice must be given.
714 So.2d at 1119 (emphasis added; some citations omitted).
Here is where the analytical mistake occurred. The D.M. opinion incorrectly assumed that the test for an inseparable crime was whether the uncharged crime occurred during a single criminal episode. But "criminal episode" is not the accepted test for an inseparable crime. Instead, the accepted test is whether the uncharged crime is inextricably intertwined with the charged crime, that is, "where it is impossible to give a complete or intelligent account of the crime charged without reference to the other crime." Charles W. Ehrhardt, Florida Evidence § 404.17, at 262-63 (citation omitted).
The D.M. decision quoted the federal Aleman decision, see D.M., 714 So.2d at 1119, but misapprehended what sort of "criminal episode" the Aleman opinion was talking about. Aleman was indicted for heroin possession and conspiracy to import and distribute heroin. An undercover agent testified that during a meeting with Aleman to discuss a cocaine purchase, Aleman made numerous admissions connecting him to a heroin trafficking venture in which several of the heroin co-conspirators had already been arrested. Aleman, 592 F.2d at 883. Aleman was indicted for the heroin charges but not the cocaine charges. The "single criminal episode" was the single meeting to discuss a cocaine transaction in which Aleman made statements incriminating himself in heroin smuggling.
The Fifth Circuit concluded that the uncharged crime  the proposed cocaine transaction  was "inextricably intertwined" with the admissions regarding the heroin smuggling. Id. at 885. The evidence was admissible "if the uncharged offense is `so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other.'" Id. at 885 (citation and some internal quotation marks omitted). The reference in Aleman to "single criminal episode," id. at 885, was an explanation why under the given facts-a single meeting to discuss a cocaine transaction-the evidence regarding cocaine and heroin was inextricably intertwined.
*1223 Turning now to D.M., there were four hand-to-hand drug sales to separate buyers, with a break in time between each sale. These do not qualify as inseparable crimes, for crimes do not qualify as being inseparable "[w]hen there is a clear break between the prior conduct and the charged conduct or it is not necessary to describe the charged conduct by describing the prior conduct. . . ." Charles W. Ehrhardt, Florida Evidence § 404.17, at 263 (footnote omitted; emphasis added); see section II supra. The four unconnected drug sales in D.M. do not (without more) qualify as inseparable crimes.[10]
None of the cases cited in the D.M. opinion involved a simple hand-to-hand drug sale like that present here, and all relied on the traditional tests for other crimes evidence. See United States v. Muscatell, 42 F.3d 627, 630-31 (11th Cir. 1995) (scheme to repeatedly sell apartment units to phony buyers so as to fraudulently inflate the value; evidence of similar prior and subsequent uncharged offenses admissible to show the existence of a continuing scheme to defraud by showing the necessary criminal intent and guilty knowledge); United States v. Montes-Cardenas, 746 F.2d 771, 780 (11th Cir.1984) (witness testified that the defendant had said he was in the cocaine business, including smuggling of cocaine; evidence was admissible on the issue of intent, even though the defendant's admission was broader than the specific cocaine-related charges that were pending); United States v. Weeks, 716 F.2d 830, 832 (11th Cir.1983) (defendant was charged with assaulting a federal officer; Weeks accused the undercover officer of being a federal agent and beat him. The trial court allowed the agent to testify that he was investigating stolen car operations, even though no such charges were pending in the defendant's trial for assaulting the officer. Evidence of the purpose of the visit to Weeks was inextricably intertwined with evidence of the charged offense and was necessary to give a complete story of the crime); Foster v. State, 679 So.2d 747, 753 (Fla.1996); (evidence admitted that the defendant stole money, drugs, and a pick-up truck from drug dealers in crime number one and used the same guns and pick-up truck in later murder and attempted murder; use of the same guns and stolen truck constituted inseparable crimes evidence needed to present a complete picture of the charged crimes, and was also admissible on the issue of the defendant's motive and criminal intent); Austin v. State, 500 So.2d 262, 265 (Fla. 1st DCA 1986) (similar).
In sum, these authorities stand for the proposition that evidence of other uncharged crimes is admissible only if the evidence qualifies as inseparable crimes evidence, or alternatively, if the evidence falls into one of the categories specified in paragraph 90.404(2)(a), Florida Statutes, as Williams rule evidence.[11]

*1224 V.
The majority opinion maintains that the evidence of the prior drug transaction was independently admissible as Williams rule evidence. I do not believe that is so.
The majority opinion says that the prior drug transaction was admissible to explain "why the surveillance officer watched the defendant for such a lengthy period of time, why his focus was on the defendant, why no drugs were found on the defendant's person, and why the officer was not mistaken regarding the identity of the seller." Majority opinion at 1216. None of these reasons withstands analysis.
The surveillance officer testified that his team conducts surveillance of areas where it has been reported that narcotics are being sold. He stated that he arrived at his place of concealment at around 4:45 in the afternoon, from which he could observe the parking lot outside the liquor store. He testified that he observed the defendant and others in the parking lot, and had the defendant in his view at all times except when the defendant went into the liquor store. The officer observed the defendant for about two hours until the defendant was arrested at around 7:00 p.m. after the sale to Ms. Edwards.
The officer did not make an assertion that he was paying attention to the defendant because the defendant made four prior uncharged drug sales during a two-hour period. The officer could not give such testimony because the order in limine only allowed the officer to testify about one uncharged hand-to-hand drug sale fifteen minutes prior to the charged sale. He testified about the one uncharged prior sale.
As matters transpired at trial, the officer gave a rational and understandable account that he had the entire area, including the defendant, under surveillance for two hours. If the defense had opened the door on cross-examination by asking the officer, for example, why he paid particular attention to the defendant as opposed to other persons, then the officer could have testified about all of the prior drug transactions. However, the defense kept the door firmly shut in this case.
The majority opinion also indicates that the uncharged crime was admissible to explain why no drugs were found on the defendant's person. That, too, is unpersuasive. The defendant was charged with sale of drugs to Ms. Edwards. After those drugs passed into the hands of Ms. Edwards, obviously the defendant no longer had them. No further explanation was needed or relevant.

VI.
For the stated reasons, the evidence of the prior uncharged hand-to-hand drug transaction should not have been admitted at the defendant's trial. The trial court cannot be faulted for having done so, because the trial court relied on this court's decision in D.M. which, as already explained, *1225 is wrongly decided on the issue here involved.
The erroneous admission of uncharged crimes evidence is presumptively harmful. See Keen v. State, 504 So.2d at 401. In this case, the defendant presented the testimony of Ms. Edwards, who testified that the defendant was not the one who sold the drugs to her. It cannot be said that the error was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Accordingly there should be a new trial.
GREEN, FLETCHER and RAMIREZ, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] The Williams rule is codified in section 90.404(2)(a), Florida Statutes (2003).
[3] Section 90.404(2)(b)1, Florida Statutes (1997), dealing with the ten-day notice, has since been renumbered as section 90.404(2)(c)1, Florida Statutes (2003).
[4] Similar fact evidence is referred to as Williams rule evidence, and as codified provides:

Section 90.404(2)(a):
(2) OTHER CRIMES, WRONGS, OR ACTS.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Section 90.404(2)(c)1 provides:
When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a) . . ., no fewer than 10 days before trial, the state shall furnish to the defendant or to the defendant's counsel a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.
[5] The terms "inseparable crimes evidence" and "inextricably intertwined evidence" are used interchangeably and refer to the same legal theory.
[6] Williams v. State, 110 So.2d 654 (Fla.1959), now codified as § 90.404(2)(a), Fla. Stat.
[7] The defendant was also charged with carrying a concealed firearm, but was acquitted of that charge.
[8] The State originally intended to call Ms. Edwards as a witness but when she informed the prosecutor that the defendant was not the seller, the defense called her instead.
[9] As explained in the majority opinion, defense counsel also objected that the State had not filed a Williams rule notice but withdrew the lack-of-notice objection after the defendant chose to proceed to trial that day rather than take a continuance the court had offered.
[10] D.M. may have also been incorrect in saying that a series of hand-to-hand drug sales to different buyers, separated in time, constitutes a single criminal episode. For present purposes it is unnecessary to explore that point.
[11] The majority opinion cites several other cases but none involved a simple hand-to-hand drug transaction like this case. Further, when the cases are examined, in each instance the "context" evidence satisfies the traditional tests for inseparable crimes evidence or Williams rule evidence. See Williamson v. State, 681 So.2d 688, 695-96 (Fla. 1996) (evidence of prior homicide was admissible to explain why state witness believed the defendant was capable of carrying out his threats and consequently why he cooperated with the defendant during the charged criminal episode); Hall v. State, 403 So.2d 1321 (Fla.1981) (evidence of uncharged prior homicide was admissible to prove identity because same weapon used in uncharged and charged crime); Vail v. State, 890 So.2d 373, 376 (Fla. 3d DCA 2004) (evidence of defendant's statements about gun at time of arrest was inextricably intertwined with evidence regarding drug sales for which defendant was arrested); see also United States v. McLean, 138 F.3d 1398, 1403-04 (11th Cir.1998) (evidence regarding defendant's participation in prior drug transactions admissible because inextricably intertwined with the charged offense); United States v. Kloock, 652 F.2d 492, 494-96 (5th Cir.1981) (fact that defendant was using false driver's license during charged drug transactions was admissible even though having such a license was a crime; license was highly probative on intent and defendant's attempt to conceal his identity).

The cited cases support Professor Ehrhardt's position that "context" evidence must meet the test for inseparable crimes evidence or otherwise qualify as Williams rule evidence. See Charles W. Ehrhardt, Florida Evidence § 404.17, at 264.