DAMOORGIAN, J.
Appellant, Anthony J. Tripoli, appeals his judgment and sentence for sexual battery on a child under twelve and lewd and lascivious conduct with a child under twelve. Tripoli raises multiple issues on appeal. We address only his first issue, in which Tripoli argues that the trial court committed harmful error by admitting into evidence uncharged collateral acts which were not relevant to prove the crimes charged and were highly prejudicial. Because we agree that the trial court erred in admitting the collateral acts evidence, we reverse Tripoli’s convictions and remand for a new trial.
The following is a brief recitation of the evidence presented by the State. The charged offenses allegedly occurred on the campus of the school where the eight-year-old victim, K.H., was enrolled. Tripoli served as a volunteer reading tutor for students at the school. No one other than the victim witnessed the crime, and there was no physical or scientific evidence that tended to show that K.H. had been sexually battered or molested.
Multiple state witnesses testified that, when Tripoli arrived at the school to tutor students, he would regularly take the students out of the classroom for their tutoring sessions. This practice was initiated at the direction of the school’s principal on the belief that the classroom was too noisy and crowded. Several school personnel testified that they felt that some of the locations to which Tripoli and K.H. went for their tutoring sessions were insufficiently monitored. These included private offices, the printing room, a backroom in the library, and the stage in the cafeteria. While some of the locations used by Tripoli were selected by the school administration, no one instructed Tripoli to use the cafeteria stage. When Tripoli used the cafeteria stage, he sometimes tutored K.H. behind closed curtains.
K.H. was the first student to complain about Tripoli or make allegations of improper behavior. K.H. had been tutored by Tripoli for approximately four months *778 when she reported the alleged abuse to her mother. According to K.H., while Tripoli was tutoring her, he would partially lower her pants and touch her “private area.” These acts included digital penetration. K.H. testified that she told her mother about the abuse because she wanted it to stop and was afraid of Tripoli.
Although K.H. reported the abuse five days after she alleged the most recent incident had occurred, the testimony at trial indicated that Tripoli was not at KH.’s school on the day in question. K.H. also showed partial uncertainty at trial regarding where the incidences of abuse had taken place.
K.H.’s mother testified that about two- and-a-half months before K.H. reported the alleged abuse to her, she had observed an incident involving K.H. and her Barbie dolls. A dressed male doll was touching the genitalia of a nude female doll with his hand. KH.’s mother had never seen K.H. play with her dolls in this manner.
The State also presented the testimony of Amanda Gooch, who was a teacher at the school. Gooch testified that Tripoli had previously tutored a male student in Gooch’s class during the 2005-2006 school year. This time frame was approximately two school years before the alleged incident with K.H. All tutoring of the student took place in Gooch’s classroom. At the end of the year, Gooch requested that Tripoli not return to her classroom because her “relationship” with Tripoli “didn’t seem to work well.”
During direct examination, the State asked Gooch if she “ever personally observe[d] anything ... out of the ordinary.” Tripoli’s counsel objected on relevancy grounds. The State had not given pretrial notice that it was offering Gooch’s testimony as Williams[1] rule evidence. The following exchange then occurred outside the jury’s presence:
[THE STATE]: Uh, Your Honor, this is not Williams’ Rule. It’s not any—
THE COURT: He [defense counsel] didn’t raise — he didn’t raise Williams’ Rule.
[THE STATE]: Okay. Uh, I think it’s relevant for how she observed his interaction with young students and there’s not actual crime there, but I think it’s relevant to how he would (indiscernible) to students that she could see.
THE COURT: I don’t know what the answer is.
[THE STATE]: The answer is that, uh, he had a little more physical contact [than] she thought should be done....
[THE STATE]: Uh, sitting somebody on his lap....
[THE STATE]: Having somebody sit on his lap while he was reading with them in the classroom....
THE COURT: Your objection is?
DEFENSE COUNSEL: Your Honor, it’s not relevant to the issue. I mean [K.H] has never, never testified here in court or in her pretrial statements, her deposition that she was — ever sat on his lap. It’s not relevant to the issue of what was the conduct between my client and [K.H.] and this is just here to inflame the jury, that’s all it is. And Ms. Gooch here is just trying to throw innuendo at this time. She’s indicated she doesn’t like him.
THE COURT: Okay. I take it as a 90.403 objection. I do not find the probative value is substantially outweighed by the factors in 90.403 so the objection is overruled.
Gooch went on to testify in relevant part as follows.
*779 [Tripoli] worked with one particular student in my class. When I would arrange an area for him to read with the student, uh, I would try to place chairs on opposite sides of the table and he would take the chair and move it around to the other side and actually bump them right next to each other was the initial thing I would notice that he would always move it around. And then, uh, he started becoming more physically affectionate toward the student in my class, more than what seemed appropriate to me at the time....
I would see Mr. Tripoli, uh, put his hand on the back of my student and kind of rub it up and down as the child was reading to him. He would also pat the student, uh, on his leg near his thigh, uh, and the hand would stay there longer as, you know it would progress, uh, to him keeping his hands on that child....
In closing, the State then made reference to Gooch’s testimony:
Ms. Gooch told you that after having [Tripoli] in her class for awhile and seeing his interactions with some of her students, she ... did not want him back. She saw him rubbing on the back, touching on the thigh, children. She did not want him back in her classroom.
Tripoli argues that the trial court erred in allowing the testimony of Amanda Gooch because it was only relevant to show character or propensity. Tripoli further argues that, even if Gooch’s testimony was relevant to show something other than character or propensity, its relevance was outweighed by its prejudicial nature. Finally, he contends that this error was harmful.
A trial court’s decision to admit collateral act evidence is reviewed for abuse of discretion, Zerbe v. State, 944 So.2d 1189, 1193 (Fla. 4th DCA 2006) (citing LaMarca v. State, 785 So.2d 1209, 1212 (Fla.2001)), but this discretion is limited by the rules of evidence. Id. (citing Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001)).
Evidence of the collateral acts of a defendant is admissible under one of two provisions. Evidence “not linked or related circumstantially to the crime charged” is admissible under section 90.404(2)(a), Florida Statutes (2008). Titel v. State, 788 So.2d 286, 288 n. 1 (Fla. 4th DCA 2000); see also Dorsett v. State, 944 So.2d 1207, 1212 (Fla. 3d DCA 2006) (“Similar fact evidence under section 90.404 is evidence totally unrelated to the charged offenses[.]”). Such evidence is commonly referred to as Williams rule evidence. See Dorsett, 944 So.2d at 1212; Griffin v. State, 639 So.2d 966, 968 (Fla.1994) (holding that evidence of acts inseparable from or inextricably intertwined with the crime charged is not Williams rule evidence). Williams rule evidence may be used to prove “a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]” § 90.404(2)(a), Fla. Stat. In particular, it is often used to establish identity through a demonstration of modus operandi. See Williams v. State, 622 So.2d 456, 462 (Fla.1993); Miller v. State, 791 So.2d 1165, 1169-70 (Fla. 4th DCA 2001); Smith v. State, 539 So.2d 556, 558 (Fla. 4th DCA 1989) (Glickstein, J., concurring specially in part and dissenting in part). If the State wishes to admit Williams rule evidence, it must provide the defendant ten days notice “of the acts or offenses it intends to offer.” § 90.404(2)(c)l., Fla. Stat. (2008); see also Griffin, 639 So.2d at 968.
Notice is not required if the State seeks to introduce evidence of collateral acts which are inextricably intertwined *780 with the crime charged under the general rule of relevance. See § 90.402, Fla. Stat. (2008); Dorsett, 944 So.2d at 1213; Griffin, 639 So.2d at 968. Examples of such evidence is evidence which is necessary to (1) “adequately describe the deed[;]” (2) “provide an intelligent account of the crime(s) charged[;]” (3) “establish the entire context out of which the charged crime(s) arose[;]” or (4) “adequately describe the events leading up to the charged crime(s)[.]” Dorsett, 944 So.2d at 1213 (citations and internal quotation marks omitted).
Conversely, evidence of the collateral acts of a defendant is not admissible if its only role is to show the defendant’s bad character or his propensity to commit the crime for which he is charged. Williams v. State, 621 So.2d 413, 414 (Fla.1993) (holding that evidence of other crimes, wrongs or acts is admissible only “if it casts light on a material fact in issue other than the defendant’s bad character or propensity.”).
The State concedes that Gooch’s testimony was not offered as Williams rule evidence under section 90.404(2)(a).[2] Moreover, even under a relevancy analysis, Gooch’s testimony was not necessary to (1) adequately describe the deed; (2) provide an intelligent account of the charged crimes; (3) establish the entire context out of which the charged crimes arose; or (4) adequately describe the events leading up to the charged crimes. See Dorsett, 944 So.2d at 1213.
Instead, the State argues that Gooch’s testimony was offered to rebut Tripoli’s argument that he had minimum physical contact with the children he tutored. Tripoli counters that, at trial, the State did not make such an argument, and as proof, refers to the State’s response to defense counsel’s objection to Gooch’s testimony and its closing argument. Tripoli is correct that the State never raised this ground for admission of Tripoli’s conduct while in Gooch’s classroom.
Even if the State had properly argued this ground before the trial court, Gooch’s testimony would be inadmissible under section 90.608(5), Florida Statutes (2008). “Section 90.608(5) provides that any party may attack the credibility of a witness by contradictory testimony given by another witness as long as the facts testified to are not collateral to the issue.” Griffin v. State, 827 So.2d 1098, 1099 (Fla. 1st DCA 2002) (citations omitted). Moreover, “[a]n issue is collateral for purposes of impeachment by contradiction, if it cannot be introduced for any reason other than contradiction.” Id. (citation omitted).
The State argues that Tripoli had made claims, both during trial and during a taped police interrogation which was played at trial, indicating that he had generally not been affectionate with the children. According to the State, Gooch’s description of Tripoli placing another child on his lap while he was tutoring the child served to rebut these claims.
*781 We find that, beyond its tendency to show that Tripoli had a propensity to molest children or that it was in his character to do so, Gooch’s testimony was not probative of Tripoli’s guilt or innocence of the charges of sexual battery or lewd and lascivious conduct against K.H. See Griffin, 827 So.2d at 1099; United States v. Payne, 102 F.3d 289, 291, 294-95 (7th Cir.1996) (holding that the proffered testimony of accomplice’s girlfriend was collateral because it was not related to the central issue concerning the defendant’s guilt or innocence on cocaine charges and was offered only for the sake of contradicting the accomplice’s testimony). Accordingly, the trial court erred by allowing Gooch to testify about Tripoli’s actions with another child.
Having concluded that the trial court erred, we next resolve whether the error was harmless. In the context of a criminal case, the harmless error test “places the burden on the [Sjtate, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Here, the State cannot make this showing. Where the evidence supporting conviction is “not overwhelming,” it is more likely that the erroneous admission of evidence is not harmless beyond a reasonable doubt. See Elisha v. State, 949 So.2d 271, 274 (Fla. 4th DCA 2007). Not only was the evidence here not overwhelming, but the credibility of K.H. and Tripoli was key to the case. See Arrington v. State, 700 So.2d 777, 778 (Fla. 2d DCA 1997) (holding error was not harmless because credibility was a major issue in the case).
Evidence suggesting Tripoli was guilty included: (a) K.H’s testimony as to the alleged events; (b) KH’s mother’s testimony as to the disturbing incident with the Barbie dolls; (c) testimony by school personnel indicating that Tripoli had the opportunity to commit the crimes; and (d) the propensity evidence provided by Gooch. Evidence suggesting Tripoli was not guilty included: (a) Tripoli’s testimony asserting that the alleged abuse never took place; (b) the absence of any physical signs of abuse; (c) the fact that Tripoli was not at the school on the Friday the most recent incident of abuse was alleged to have taken place; and (d) the testimony of KH.’s teacher and the Big Brothers/Big Sisters coordinator, who both testified that K.H. did not show signs that anything was wrong concerning her relationship with Tripoli.[3]
The evidence taken as a whole, together with the abhorrent nature of the crimes for which Tripoli was charged, leads us to conclude that the error was not harmless.

Reversed and Remanded.

MAY and GERBER, JJ., concur.

. Williams v. State, 110 So.2d 654, 659-63 (Fla.1959).

. We recognize that, under section 90.404(2)(b)l., Florida Statutes (2008), "evidence of the defendant’s commission of other crimes, wrongs, or acts of molestation is admissible” in child molestation cases, and "may be considered for its bearing on any matter to which it is relevant.” See also Zerbe, 944 So.2d at 1194 (noting that, for collateral evidence of child molestation to be admissible, "the State must present clear and convincing proof that the collateral act occurred.” (citing McLean v. State, 934 So.2d 1248, 1262 (Fla.2006) (providing a non-exclusive list of factors for the trial court to evaluate to determine whether the probative value of evidence of prior molestations is substantially outweighed by the danger of unfair prejudice))). Neither party raised subsection (2)(b) 1., and the State’s argument on appeal does not center on the relevancy of Gooch’s testimony, but on the use of the testimony to impeach Tripoli by contradictory evidence.

. Courts are also less likely to find an error harmless where the State relies on the erroneously admitted evidence during its closing argument. See McKeown v. State, 16 So.3d 247, 249 (Fla. 4th DCA 2009) (holding that erroneous admission of officer’s irrelevant testimony was not harmless, in part, because the State "compounded the error by repeating the improper testimony during closing argument.”); Deville v. State, 917 So.2d 1058, 1059-60 (Fla. 4th DCA 2006) (holding that error was not harmless, in part, because the State mentioned the inadmissible evidence during its closing argument); Woodard v. State, 978 So.2d 217, 220 (Fla. 1st DCA 2008) (holding, in child molestation case, that the erroneous admission of collateral act evidence was not harmless, in part, because the State referred to it during both the opening statement and closing argument).