DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ERIC ROBINSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-1530

[November 12, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Bernard I. Bober, Judge; L.T. Case No. 17-011373-CF-10A.

Daniel Eisinger, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Luke R. Napodano, Senior Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his conviction for second-degree murder and life sentence. He argues the trial court erred in excluding evidence regarding the victim's girlfriend's motive to kill the victim, and in admitting evidence the defendant had recently been released from jail prior to the murder. The defendant also argues the trial court erred in denying a motion to continue the previous trial and in sentencing him as a habitual felony offender. And last, he argues he was entitled to a twelve-person jury. We find no error and affirm.

- *The Facts*

The victim, the defendant, and the girlfriend were roommates. The girlfriend dated the defendant before he went to jail. Unbeknownst to the defendant, the girlfriend began dating the victim while the defendant was incarcerated. Two days after his release from jail, the defendant killed the

victim after finding the victim and the girlfriend in bed together. The defendant and the girlfriend proceeded to dispose of the body and cover up the murder.

The State charged the defendant with second-degree murder and charged the girlfriend with accessory after the fact. The defense argued the girlfriend killed the victim and blamed it on the defendant. The first trial ended in a mistrial. The second trial began the following week.

A few weeks prior to the murder, the girlfriend and victim had a fight. The girlfriend damaged the victim's vehicle and had to stay at a hotel overnight. The defendant sought to admit evidence of this domestic dispute. The State argued the details were irrelevant to the charged crime as the victim and the girlfriend were back together at the time of the incident.

On the day of the murder, the girlfriend awoke to the defendant in the bedroom. According to her, the defendant bludgeoned the victim to death. The defendant then had her travel with him to dispose of the body. They went to the dump, attempted to find a place in the Everglades, but ultimately deposited the body in a dumpster behind a Publix.

They shopped for materials to clean the crime scene. The defendant cut the blood-soaked mattress into pieces and disposed of it in another dumpster. They both painted inside the house.

The girlfriend eventually called her ex-husband, who advised her to contact the police. The police called the girlfriend and then came to the house. The girlfriend told police where the body and mattress were located.

A video showing the defendant driving a pickup truck into the landfill was admitted into evidence. The victim and the defendant were contributors to DNA on the defendant's right shoe. The defendant was a contributor to DNA from a white spot on a blue bed sheet. The girlfriend and the defendant were contributors to DNA on the inside of gloves recovered by the police.

Cell site data showed the defendant's and girlfriend's cell phones moved together from the homicide location to the Publix, to around Big Lots, then returned to the homicide location.

The lead detective testified as a defense witness that he took several statements from the girlfriend, which resulted in multiple inconsistencies.

Initially, the girlfriend said she never had a phone, but surveillance footage proved her wrong. Throughout her statements, the order of events kept changing and certain places were left out. The girlfriend was also inconsistent about whether she helped remove the body from the house.

During the deliberations, the jurors asked about the time frame of the defendant's relationship to the girlfriend. The trial court instructed the jury to rely on their collective recollection of the testimony. The jury found the defendant guilty of second-degree murder and specifically found the defendant carried, displayed, or used a weapon during the commission of the crime. The trial court sentenced the defendant to life in prison as a habitual felony offender.

- *The Analysis*

On appeal, the defendant raises five issues. We affirm all of them but write to discuss the evidentiary issues.

- **Excluding details of a prior domestic incident.**

First, the defendant argues the trial court erred in excluding evidence of the girlfriend's motive to kill the victim, which included that the girlfriend smashed the victim's truck during an argument. The victim called the police, demanded money from the girlfriend for the damage, and threatened to have her arrested.

The State responds that the defense failed to proffer evidence drawing a nexus between the domestic dispute and the murder. The evidence was merely an inadmissible prior bad act. Even if relevant, any relevance was substantially outweighed by the danger of unfair prejudice. And any error was harmless.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion, limited by the rules of evidence. *Tripoli v. State,* 50 So. 3d 776, 779 (Fla. 4th DCA 2010) (citation omitted).

During the second trial, the State moved to exclude evidence of the domestic incident. The State argued this was "reverse *Williams*[1] rule" evidence which required a hearing. The State noted the defense sought to introduce damage against a vehicle rather than violence against the victim.

---

[1] *Williams v. State,* 110 So. 2d 654 (Fla. 1959).

3

The trial court excluded the evidence, finding it was a prior bad act, showing the girlfriend was prone to be violent, and there was nothing to establish a motive. The trial court allowed the defense to argue the girlfriend and the victim had many arguments with each other but could not get into the specifics of prior bad acts.

Prior to the girlfriend testifying, the defense asked the court to revisit the issue. The defense argued it should be able to show the victim threatened the girlfriend with arrest putting her immigration status in jeopardy.

The trial court ruled that the defense could admit evidence that the girlfriend and the victim had a verbal fight over money and the victim kicked the girlfriend out of the house. The trial court also allowed the defense to introduce evidence that the victim wanted money because the girlfriend wrecked his truck but prohibited the defense from describing how she wrecked his truck.

The defense proffered the girlfriend's anticipated testimony. The trial court stated its ruling would stay the same and those areas of inquiry were inadmissible as prior bad acts and "simply irrelevant to the incident that occurred here."

During the girlfriend's cross-examination, the defense elicited that the victim and the girlfriend had argued prior to the murder and the victim did not want her back home. The girlfriend stayed in a hotel for one night and returned home the next day. The State's objection to defense counsel's questions regarding the victim demanding money from the girlfriend were sustained.[2]

The issue boils down to whether the trial court correctly found the prior domestic incident was not relevant and more prejudicial than probative.

"Generally, the test for the admissibility of evidence is relevance." *Castanon v. State*, 162 So. 3d 52, 54 (Fla. 4th DCA 2014) (citing § 90.402, Fla. Stat. (2012)). "Relevant evidence is defined by statute as 'evidence tending to prove or disprove a material fact.'" *Id.* (citing § 90.401, Fla. Stat.).

To determine whether to admit relevant evidence, the court must apply a balancing test, weighing the probative value of the evidence against the

---

[2] The defense later also proffered the testimony of the officer who responded to the domestic incident between the girlfriend and the victim.

danger of unfair prejudice, among other factors. *State v. McClain*, 525 So. 2d 420, 421 (Fla. 1988). The trial court possesses "a large measure of discretion . . . to determine whether the probative value of the evidence is substantially outweighed" by the danger of unfair prejudice. *Id.* at 422.

Accordingly, "[i]f a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense." *State v. Savino,* 567 So. 2d 892, 894 (Fla. 1990).

Here, as the trial court correctly noted, the relevance of the prior domestic incident to the murder was virtually nonexistent. The incident did not show the girlfriend had been physically violent toward the victim. And the trial court permitted the defense to discuss the incident without the factual detail. Even under the *Savino* test, "[e]vidence of bad character or propensity to commit a crime by another would not be admitted; such evidence should benefit a criminal defendant no more than it should benefit the state." 567 So. 2d at 894.

The trial court found, and we agree, the evidence was more prejudicial than probative. *See* § 90.403, Fla. Stat.

We see no abuse of discretion in the trial court's decision. We also deem any error harmless as the trial court allowed the defense to discuss the incident without irrelevant detail. *McCall v. State*, 365 So. 3d 1253, 1258 (Fla. 1st DCA 2023) (quoting *Thorne v. State*, 271 So. 3d 177, 185 (Fla. 1st DCA 2019)).

- ○ **Admitting evidence that the defendant was released from jail.**

In his second argument, the defendant argues the trial court erred in allowing the State to introduce that the defendant was incarcerated for an unrelated crime prior to the murder. He claims the evidence of the defendant's unexpected discovery of the relationship between the victim and the girlfriend could have been introduced without specifying the defendant had been released from jail.

The State responds the evidence was relevant "to establish the entire context out of which the homicide arose. . . ." In any event, the State suggests the error was harmless.

5

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion, limited by the rules of evidence. *Tripoli*, 50 So. 3d at 779.

Prior to trial, the defendant moved to exclude evidence he was incarcerated and released days before the murder. During the first trial, the trial court ruled that the defendant being in jail went to motive and explained the events leading up to the murder. The trial court found it would explain why the defendant was so upset.

During jury selection on the second trial, defense counsel questioned the prospective jurors regarding the jail issue. The defense struck prospective jurors unable to set the jail issue aside. The defense also crafted a special jury instruction that evidence of the defendant's incarceration for a non-violent offense should not be considered as evidence of guilt in the instant case. The trial court read that instruction to the jury.

"Evidence is inextricably intertwined if the evidence is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose, or (4) adequately describe the events leading up to the charged crime(s)." *McGee v. State*, 19 So. 3d 1074, 1078 (Fla. 4th DCA 2009) (quoting *Dorsett v. State*, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006)).

The trial court applies a balancing test to determine whether to admit relevant evidence. *McClain*, 525 So. 2d at 421. The trial court possesses discretion in making this determination.

We agree with the trial court. The defendant's stay in the jail prior to the murder was relevant and inextricably intertwined. It was necessary to establish the context out of which the charged crime arose. When the defendant was released, he went to the residence he had shared with the girlfriend to collect his things. There, he found the victim's love letter to the girlfriend. The love letter created the motive for the murder.

Here, the evidence was "sanitized" of all unnecessary details that would be more prejudicial than probative as the jury was not informed of the defendant's specific offense, and was told it was a non-violent offense. *See Kates v. State*, 41 So. 3d 1044, 1046 (Fla. 1st DCA 2010) ("[E]ven if evidence of an uncharged crime is inextricably intertwined with the charged offense and is thus admissible to establish the entire context of the crime, unnecessary details must be excluded.").

6

While it may not have been the decision another judge may have made, it was not such that no reasonable judge would have reached the same conclusion as is required to find an abuse of discretion. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980).

We also agree that any error on this issue was harmless. *Ross v. State*, 913 So. 2d 1184 (Fla. 4th DCA 2005). The defense had the opportunity to question the venire. And the trial court provided a special instruction to advise the jury the defendant's confinement was for a non-violent offense. *See Villanueva v. State*, 917 So. 2d 968, 972 (Fla. 3d DCA 2005).

*Affirmed.*

KUNTZ, C.J., and METZGER, ELIZABETH, Associate Judge, concur.

\*   \*   \*

***Not final until disposition of timely-filed motion for rehearing.***

7