# Third District Court of Appeal

## State of Florida

Opinion filed February 13, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-169
Lower Tribunal No. 10-4694

_____

**Jesus Mendez,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An appeal from the Circuit Court for Miami-Dade County, Jorge Rodriguez-Chomat, Judge.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Keri T. Joseph, Assistant Attorney General, for appellee.


Before SALTER and LOGUE, JJ., and SUAREZ, Senior Judge.

SUAREZ, Senior Judge.

Jesus Mendez appeals from his convictions for lewd or lascivious molestation of a minor under the age of twelve and for sexual battery on a minor

under the age of twelve.  Mendez challenges the sufficiency of the evidence with respect to the molestation conviction and also argues that the trial court improperly admitted evidence of an uncharged crime, resulting in an unfair trial.  We agree and vacate the molestation conviction, reverse the battery conviction, and remand for a new trial.

## BACKGROUND

Mendez and M.H., his niece, lived in the same two-bedroom house.  Mendez lived there with his then-girlfriend and their two children.  Mendez's brother slept in the living room with his wife and daughter, M.H.  On February 12, 2010, M.H., who was eight, told her teacher that she was scared to go home because her uncle (Mendez) had touched her privates.  M.H. repeated the allegation to school administrators and told them that her uncle had told her to keep what happened a secret or he would kill her.  The school immediately contacted the authorities.  That same day, Detective Paul Espana went to the house, where he took photographs and collected a comforter from Mendez's room.  Detective Espana then had M.H. transported to Kristi House for a physical examination.

At Kristi House, Doctor Walter Lambert interviewed M.H. before the physical examination.  Doctor Lambert testified that M.H. told him the following during the interview: "Yesterday my uncle, Jesus, touched me in my private . . . with his finger. I was wearing jeans and butterfly panties. It was under my clothes, under my panties . . . at nighttime in his

2

room . . . ." M.H. further stated that Mendez threatened to punch her if she told anyone and that her mother did not believe her at first. With respect to the physical examination, Doctor Lambert testified that M.H. had a "normal examination" with no injuries, which could be consistent with M.H.'s allegations but also consistent with the allegations being false. Doctor Lambert collected M.H.'s underwear but did not take DNA swabs because M.H. told him that she had bathed.

Later that night, police took Mendez into custody. At trial, Mendez testified that he arrived at the police station around midnight, and the police interrogated him from 2:00 AM to 6:00 AM. According to Mendez's testimony, he told the police that there was one past incident where he had accidentally touched M.H. "where she wasn't supposed to be touched" while he picked her up. He further testified that he never touched M.H. under her clothes. Detective Espana testified as a rebuttal witness. According to Espana, Mendez denied touching M.H. throughout the interrogation, but eventually admitted to accidentally touching M.H., on two occasions, underneath her clothing while trying to remove her from her bed.

On February 18, 2010, Pam Garman conducted a forensic interview of M.H. The interview was recorded and admitted into evidence during Garman's testimony. According to the Interview Report, "MH was asked what happened and she said, 'once upon a time.' She was

then advised to tell me the truth and not a story." M.H. said the incident had occurred in her godfather's room and then corrected herself and said she meant her uncle Mendez's room. M.H. told Garman that Mendez placed his finger inside her privates and that she began to bleed and saw a drop of blood on her underwear.[1] M.H. further stated that she told her mother what happened right after the incident and that her mother did not believe her.[2] M.H. also told Garman that Mendez had touched her on the outside of her clothes the day before the incident, in the living room.

M.H.'s out-of-court statements were admitted under section 90.803(23), Florida Statutes (2018), which creates a hearsay exception for statements made by child victims. M.H. also testified at trial.[3] She stated that Mendez had touched her under her clothing, inside her front private part, and that the next morning she had blood on her underwear. She further testified that Mendez told her that if she told anyone he would kill her mother but that he did not directly threaten her. M.H. also denied reporting the abuse to her teacher the next day.

During her trial testimony, M.H. did not recall the incident she mentioned during her forensic interview where Mendez had touched her in the living room

---

[1] At trial, Cozette Alvarez, a forensic biologist at the Miami-Dade crime lab, testified that the underwear lab results came back negative for the presence of blood.

[2] At trial, the mother denied that M.H. reported any abuse to her at home; she testified that she did not find out until the school notified her.

[3] Trial commenced on February 21, 2012, nearly two years after the incidents.

outside of her clothes.  However, when asked if she remembered any other times she had been touched, she described a prior, uncharged incident where Mendez tried to touch her in exchange for candy:

> [THE STATE: M.H.], do you remember any other times that Jesus touched you?
>
> [M.H.]: Yes.
>
> [STATE]: What do you remember?
>
> [M.H.]: One night [in] my stepfather's sister's room, the kids were sleeping on the bottom bed and [in] the living room, everybody was like watching the game. They were like screaming . . . because their team was winning and I had to sleep in Jesus' room . . . . Jesus had like candy on top of a thing and he gave me some, I ate it and then . . . I asked can I get some more. He was like first let me touch there. And I'm like no. And he's like if you want some more candy let me touch you. And I was like no, I don't want no more candy and I [went] to bed.
>
> [THE STATE]: Did he touch you?
>
> [M.H.]: No, I didn't let him.

The State referenced this claim in closing argument to argue that Mendez had been grooming M.H. for abuse:

> [STATE]: Where does he get off, grooming behavior, the candy, being gross? It is gross. It's called grooming your victim: you let me touch you, I will give you candy.

Mendez was ultimately convicted of one count of sexual battery and one count of lewd and lascivious molestation.[4]  He was sentenced to life in prison for

---

[4] Mendez was initially convicted of two counts of lewd and lascivious molestation,

the sexual battery, with a concurrent twenty-five year sentence for the molestation. This belated appeal follows.

ANALYSIS

Mendez raises two arguments on appeal. First, he argues that there was insufficient evidence to support the molestation conviction because M.H.'s testimony at trial was inconsistent with her out-of-court statements, and there was no other proper corroborating evidence. Second, Mendez argues that improperly introduced evidence of an uncharged collateral crime deprived him of a fair trial. We address each argument in turn.

## I. Sufficiency of the Molestation Conviction

The molestation charge was based on M.H.'s out-of-court statement, during the forensic interview, that Mendez had inappropriately touched her on the outside of her clothing in the living room the day before the more serious sexual battery incident in the bedroom. At trial, however, M.H. repeatedly denied remembering the incident in the living room. On appeal, Mendez argues that M.H.'s uncorroborated out-of-court statements were insufficient to sustain his conviction for lewd or lascivious molestation. We agree.

Because Mendez's challenge to the sufficiency of the State's case was not preserved below, we review this issue for fundamental error. F.B. v. State, 852 So.

---

but because one of the molestation counts pertained to the same act as the sexual battery, that count was vacated.

2d 226, 229 (Fla. 2003). Fundamental error occurs "when the evidence is insufficient to show that a crime was committed at all." Id. at 230. Because M.H.'s out-of-court statements with respect to the molestation charge were inconsistent with her trial testimony and not supported by other proper corroborating evidence, we find that the evidence was insufficient to show that the molestation occurred at all.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Beber v. State, 887 So. 2d 1248, 1251 (Fla. 2004) (quoting In re Winship, 397 U.S. 358, 364 (1970)). The information stated that Mendez "did unlawfully and intentionally touch the breasts, genitals, genital area, or buttocks, or the clothing covering the breasts, genitals, genital area, or buttocks, of M.H. (A MINOR), a person less than 12 years of age in a lewd or lascivious manner, in violation of 800.04(5)(b), Fla. Stat . . . ." The only evidence that this occurred was from M.H.'s out-of-court statement during the forensic interview, which was admitted under the child victim hearsay exception, section 90.803(23), Florida Statutes (2018).

At trial, M.H. stated multiple times on direct and cross-examination that she did not recall the molestation incident she had described during her forensic interview:

[DIRECT EXAMINATION]

7

**Q.** Okay. And I just want to ask you one last question, [M.H.]: Do you remember any other times that Jesus touched you?
**A.** No.

. . . .

**Q.** [M.H.], I want to ask you, I know I just said one last question. I lied . . . . Do you remember if Jesus touched you when you were sleeping in the living room?
**A.** No.
**Q.** You don't remember that incident?
**A.** No.

. . . .

[CROSS-EXAMINATION]
**Q.** All right. So, you don't remember, then, what you said to the lady at the Christie House, do you?
**A.** No.
**Q.** Do you recall telling the lady at the Christie House that Jesus touched you the first time in the living room, do you remember telling that lady that that happened in the living room?
**A.** No.

In <u>Baugh v. State</u>, 961 So. 2d 198, 204 (Fla. 2007), a case also involving "the admission of pretrial statements as substantive evidence under the child victim hearsay exception[,]" the Florida Supreme Court repeated the established principle that "a prior inconsistent statement standing alone is insufficient as a matter of law to prove guilt beyond a reasonable doubt."[5] (quoting <u>State v. Green</u>, 667 So. 2d

[5] The State suggests that this rule is inapplicable because M.H.'s out-of-court statements were admitted under the child hearsay exception, section 90.803(23), and not as prior inconsistent statements under section 90.801(2)(a). Although the rule set forth in <u>Baugh</u> originated from <u>State v. Moore</u>, 485 So. 2d 1279 (Fla. 1986), which only addressed the sufficiency of prior inconsistent statements, <u>Moore</u>'s holding has been expanded to address the sufficiency of evidence admitted under the child hearsay exception. <u>See</u> <u>State v. Green</u>, 667 So. 2d 756, 760 (Fla. 1995) ("We reiterate that conclusion today, finding that our holding in *Moore* . . . applies regardless of whether the prior inconsistent statement is

756, 760 (Fla. 1995)); see also Beber v. State, 887 So. 2d 1248, 1252 (Fla. 2004). Here, M.H.'s statements during the forensic interview, which formed the basis for the molestation charge, were inconsistent with her trial testimony, where she was asked multiple times about the incident, and she repeatedly denied remembering anything about it.

The State argues that M.H.'s trial testimony was consistent with her forensic interview because she testified that she was touched twice—once over her clothing and the second time under her clothing. However, the State's record citations do not support this assertion. The State first directs us to the trial testimony of Ms. Garman, the forensic interviewer. But this is simply Ms. Garman's recapitulation of M.H.'s out-of-court forensic interview. Next, the State points us to testimony that directly contradicts its position, where M.H. only addressed the sexual battery incident and denied being touched over her clothes:

> **Q.** Did Jesus touch you on top of your pants and panties?
> **A.** No.
> **Q.** Did he touch you underneath your pants and panties?
> **A.** Yes.

Finally, the State relies on a leading question asked during cross-examination, where defense counsel summarized M.H.'s allegations and mentioned two separate touching incidents. Based on our careful review of the record, we cannot find that

---

admitted under section 90.801(2)(a) or section 90.803(23).").  Indeed, Baugh itself deals with statements admitted under the child hearsay exception.

9

M.H.'s trial testimony was consistent with her forensic interview, especially in light of M.H.'s repeated and consistent denials that she remembered the incident.

Although M.H.'s out-of-court statements, standing alone, are insufficient to prove Mendez's guilt with respect to the molestation charge, statements admitted under the child victim hearsay exception may be used "as substantive evidence when other proper corroborating evidence is submitted." Green, 667 So. 2d at 761. Here, the State relies on Mendez's statements to police that he accidentally touched M.H. "where she wasn't supposed to be touched" while picking her up. However, this evidence is insufficient to corroborate M.H.'s out-of-court statements. See Span v. State, 732 So. 2d 1196, 1197 (Fla. 4th DCA 1999) ("[T]he State may not rely on evidence presented in the defense's case to supply the missing elements necessary to prove its case."). Because the evidence at trial was legally insufficient[6] to support Mendez's lewd and lascivious molestation conviction, we hold that fundamental error has occurred, and we vacate said conviction.

## II. Evidence of the Uncharged Attempted Molestation

We now turn to the second argument Mendez raises on appeal: that the improperly introduced evidence of a prior uncharged attempted molestation deprived Mendez of a fair trial. This argument was not preserved, so to prevail, Mendez must demonstrate fundamental error. Fike v. State, 4 So. 3d 734, 739

[6] "Legal sufficiency alone, as opposed to evidentiary weight," is our only concern. See Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1981), aff'd sub nom. Tibbs v. Florida, 457 U.S. 31 (1982).

10

(Fla. 5th DCA 2009). As we have already explained, M.H. was unable to corroborate, at trial, the molestation incident she had described during her forensic interview. When the State attempted to elicit testimony about this incident, M.H. unexpectedly mentioned a time when Mendez had asked to touch her in exchange for candy, though she denied that he had touched her. During closing arguments, the State relied on this incident as evidence of grooming: "Where does he get off grooming behavior [sic], the candy, being gross? It is gross. It's called grooming your victim: You let me touch you, I will give you candy . . . ."

"Evidence of bad acts not included in the charged offenses is generally referred to as 'collateral crimes evidence.'" Dorsett v. State, 944 So. 2d 1207, 1212 (Fla. 3d DCA 2006). Generally, collateral crimes evidence is admissible to prove "a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." § 90.404(2)(a), Fla. Stat. (2018). This general rule of admissibility is referred to as the Williams rule. Charles W. Ehrhardt, 1 Fla. Prac., Evidence § 404.9 (2018 ed.); see also Williams v. State, 110 So. 2d 654, 659 (Fla. 1959). In cases involving child molestation, the rule on admissibility of collateral crimes evidence is even broader:

> 1. In a criminal case in which the defendant is charged
> with a crime involving child molestation, evidence of the
> defendant's commission of other crimes, wrongs, or acts

11

of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.

§ 90.404(2)(b), Fla. Stat (2018).

If the State intends to introduce Williams rule evidence, it must give written pretrial notice:

> 1. When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), paragraph (b), or paragraph (c), no fewer than 10 days before trial, the state shall furnish to the defendant or to the defendant's counsel a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.

§ 90.404(d), Fla. Stat (2018). Here, no pretrial notice was given.

The State argues that M.H.'s candy incident testimony was not Williams rule evidence because it was inextricably intertwined with the crimes charged. Specifically, the State asserts that the evidence showed the entire context in which the molestation and sexual battery occurred because it showed how Mendez groomed M.H. Evidence that is inextricably intertwined with the charged offense falls into the category of relevant evidence under section 90.402; therefore, no pretrial notice under section 90.404(2)(d) is required. See Dorsett, 944 So. 2d at 1213 ("Relevant evidence admitted under section 90.402 does not require notice."); see also Ehrhardt, supra, at § 404.17 ("Because the evidence is admissible under section 90.402, rather than 90.404(2), the ten day notice

12

provision in section 90.404(2) is not applicable. However, the defendant will almost always be fully aware of this evidence and prepared at trial to dispute it because it is an inseparable part of the charge crime.").

We reject the State's argument that the evidence was inextricably intertwined because evidence of the uncharged act was not necessary to describe the crimes charged. See Beckman v. State, 230 So. 3d 77, 84 (Fla. 3d DCA 2017) ("Collateral evidence is admissible under section 90.402 if it is a "relevant and inseparable part of the act which is in issue." (quoting Dorsett, 944 So. 2d at 1214-15)). "The Florida courts have reasoned that the evidence of an inseparable crime should be admitted when it is inextricably intertwined with the underlying crime and where it is impossible to give a complete or intelligent account of the crime charged without reference to the other crime." Ehrhardt, supra, at § 404.17 (footnotes and internal quotation marks omitted). Here, evidence of the candy incident was not necessary to give a complete account of the molestation or the sexual battery. Indeed, the State concedes that it was not even aware of the candy incident before trial, which undermines its argument that this incident was an inseparable part of the charged offenses.

We must now determine whether the admission of the uncharged crime rises to the level of fundamental error. We conclude that it does because, as in Fike, this case turned solely on the victim's credibility, and "[t]here was no physical evidence to corroborate her version of

13

events, nor was there any confession or admission." 4 So. 3d at 739. With respect to the physical evidence, M.H. underwent a full physical examination the day after the sexual battery. Dr. Lambert testified that it was a normal examination and there were no signs of injury. There was no DNA evidence to corroborate the incident since no DNA was collected from M.H. or from Mendez's bedroom. Dr. Lambert did collect M.H.'s clothing, and although M.H. told the forensic interviewer and also testified at trial that there was blood in her underwear after the sexual battery, the lab results came back negative for the presence of blood. There was also no confession or admission to the charged crimes. Because there was no physical evidence or confession to corroborate M.H.'s version of the events, we find that this is one of the very rare cases in which the fundamental error doctrine applies. See Fike, 4 So. 3d at 739 ("Fundamental error is error that undermines the confidence in the trial outcome and goes to the very foundation of a case. Mathew v. State, 837 So.2d 1167, 1170 (Fla. 4th DCA 2003). That has occurred here. 'Because of the commonly held belief that individuals who commit sexual assaults are more likely to recidivate as well as societal outrage directed at child molesters, the admission of prior acts of child molestation has an even greater potential for unfair prejudice than the admission of other collateral crimes.'").

CONCLUSION

For the reasons set forth above, we conclude that (1) there was insufficient evidence as to Mendez's molestation

14

conviction, and (2) the State's reliance on evidence of an uncharged crime, coupled with the lack of corroborating physical evidence or a confession, undermined the confidence in the verdict. We therefore reverse and remand with instructions to vacate Mendez's conviction for lewd or lascivious molestation and to enter a judgment of acquittal as to that charge, and to conduct a new trial with respect to the remaining sexual battery charge.

REVERSED and REMANDED.