# Third District Court of Appeal
## State of Florida

Opinion filed July 20, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-561
Lower Tribunal No. 13-319-A-K
_____

**The State of Florida,**
Appellant/Cross-Appellee,

vs.

**Michael Clayton Woodruff,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Monroe County, Mark H. Jones, Judge.

Ashley Moody, Attorney General, and Michael W. Mervine, Chief Assistant Attorney General, and Brian H. Zack, Former Assistant Attorney General, for appellant/cross-appellee.

McLain Law, P.A., and Matthew R. McLain (Longwood), for appellee/cross-appellant.

Before EMAS, GORDO, and BOKOR, JJ.

BOKOR, J.

The State challenges a grant of postconviction relief under Florida Rule of Criminal Procedure 3.850(b) directing a new trial on one count of lewd and lascivious molestation of a child under the age of twelve.[1]  Because the postconviction court erred in concluding that defense counsel's failure to object to evidence of uncharged collateral crimes satisfied the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984), where the evidence did not relate to the only charge that resulted in a conviction, we reverse.[2]

## FACTS AND PROCEDURAL HISTORY

Woodruff was originally charged with one count of sexual battery on a child and three counts of lewd and lascivious battery on a child under the age of twelve.  All four charges stemmed from three incidents that occurred between July 10and August 29, 2009, when the victim was nine years old and staying with Woodruff and his wife.  The State's case relied entirely on the victim's testimony and Woodruff's statements to investigators.

Two of the lewd and lascivious molestation charges (Counts 2 and 4) stemmed from an incident that occurred late one night while Woodruff's wife

---

[1] We have jurisdiction.  See Fla. R. Crim. P. 3.850(k); Fla. R. App. P. 9.140(c)(1)(C).

[2] Woodruff cross-appeals the denial of several other grounds for postconviction relief.  We affirm as to the cross-appeal without further discussion.  Fla. R. Crim. P. 3.850(f)(4).

2

was away. Woodruff allegedly came into the victim's room at around midnight and carried her into his room. He then undressed himself and asked her to undress, purportedly so he could explain anatomy to her. He gave her a hand mirror so she could see "the hole where the baby comes out" and directed her to spread her labia so she could get a better look. During this event, he allegedly touched the victim's vagina, forming the basis for Count 4. He also asked the victim if she wanted to touch his penis, which she did, causing it to become erect and forming the basis for Count 2. Woodruff acknowledged asking the victim to undress and explaining anatomy to her, purportedly in response to her questions about reproduction, but denied ever exposing his penis (Count 2) or touching her vagina (Count 4).

The other molestation charge (Count 3) was based on events occurring immediately after the incident described above. Woodruff allegedly had the victim take a shower with him, during which he touched her breasts, genital area, and buttocks. He also directed her to wash his body, including touching his penis. Woodruff denied ever showering with or touching the victim. The State also presented evidence of a second, uncharged shower incident that occurred sometime thereafter, during which

3

Woodruff purportedly also touched the victim's genitals and had the victim touch his penis.

The sexual battery charge (Count 1) was based on a separate incident in which Woodruff and the victim swam together naked. The victim alleged that Woodruff briefly put his penis in her vagina while hugging her and playing games in the pool. Woodruff acknowledged swimming naked with the victim and conceded the possibility that his penis brushed against her, but otherwise denied the allegation.

Following a jury trial, Woodruff was convicted of only Count 4, which related to touching the victim's vagina during the bedroom incident. He challenged that conviction on direct appeal. Woodruff v. State, 208 So. 3d 1265 (Fla. 3d DCA 2017) (affirming conviction). Woodruff subsequently filed a rule 3.850 motion for postconviction relief, alleging, in pertinent part, that his trial counsel was ineffective for failing to object to the admission of collateral crimes evidence. Specifically, he alleged that the State proffered evidence of at least seven discrete acts of molestation or battery occurring during those same events, though he was only charged with four. He claimed that these additional acts related to his propensity to commit similar crimes or improper bolstering of the victim's credibility, amounting to

4

prohibited <u>Williams</u> rule evidence.[3]  Therefore, Woodruff argued, his counsel's failure to object constituted prejudicial and ineffective assistance of counsel.  The State argued in response that the testimony was not <u>Williams</u> rule evidence because it was inextricably intertwined with the charged acts, as the uncharged acts all took place during the same sequence of events and were necessary to explain the charges.  <u>See, e.g.</u>, § 90.404(2)(a), Fla. Stat.[4]  After an evidentiary hearing, the trial court granted the motion in part and directed a new trial on Count 4.  This appeal followed.

**ANALYSIS**

Appellate review of a postconviction motion alleging ineffective assistance of counsel presents a mixed question of law and fact, whereby

---

[3] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).

[4] In a child molestation case, the rule regarding introduction of collateral crime evidence under section 90.404(2)(b)1. is broader than collateral crime evidence admissible in other cases under section 90.404(2)(a); "evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant." § 90.404(2)(b)1., Fla. Stat.  However, to invoke this provision, the State must provide the defendant with a written list describing with specificity the collateral acts it intends to proffer, the court must make findings that the prior acts were proven by competent, substantial evidence and that the danger of unfair prejudice from their admission did not outweigh the probative value, and the jury must also be instructed on the limited purpose for which the evidence was received.  <u>See</u> <u>id.</u> (2)(d)1.–2.; <u>McLean v. State</u>, 934 So. 2d 1248, 1256, 1262 (Fla. 2006).  The State did not seek admission under section 90.404(2)(b)(1); therefore, we examine admissibility under section 90.404(2)(a).

5

we defer to the trial court's findings of fact if supported by competent, substantial evidence but review the court's conclusions of law de novo. See, e.g., Foster v. State, 132 So. 3d 40, 52 (Fla. 2013). "To obtain relief on claims of ineffective assistance of counsel, the defendant 'must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense.'" Id. (quoting in part Sochor v. State, 883 So. 2d 766, 771 (Fla. 2004)). To demonstrate such prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Here, the State charged Woodruff with four acts of molestation or sexual battery: (1) touching the victim's vagina during the bedroom incident (Count 4); (2) having the victim touch his penis during the same incident (Count 2); (3) touching the victim's vagina, breasts, and buttocks in the shower afterward (Count 3); and (4) putting his penis in the victim's vagina in the pool on a separate occasion (Count 1). However, as the trial court observed, the State presented evidence of at least three other uncharged acts of molestation, including having the victim wash his penis during the first

6

shower incident, as well as touching the victim's vagina and having the victim touch his penis during a second, uncharged shower incident.[5]

We agree that the additional acts during the second, uncharged shower incident were not, as the State contends, inextricably intertwined with the acts charged, and therefore do not constitute admissible collateral crimes evidence under section 90.404(2). Evidence that is necessary to adequately describe the crimes charged or provide intelligent context of the circumstances is not barred by section 90.404(2), but rather is admissible as relevant evidence under section 90.402, Florida. Statutes. See Dorsett v. State, 944 So. 2d 1207, 1212 (Fla. 3d DCA 2006) (holding that officer's testimony regarding prior drug transaction in drug sale case was inextricably intertwined with current charges and properly admissible collateral crime evidence because the reliability of the officer's identification of the defendant was a material issue in dispute); cf. Mendez v. State, 271 So. 3d 1093, 1100 (Fla. 3d DCA 2019) (holding that admission of collateral crime evidence as to alleged grooming of victim in child molestation case was fundamental error

---

[5] The crime of lewd and lascivious molestation occurs when "[a] person [] intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator." § 800.04(5)(a), Fla. Stat. If done by a person over the age of 18 against a person under the age of 12, the crime is punishable as a life felony. Id. (5)(b).

7

where prior incident occurred the day before the charged events and was not relevant or inseparable part of charged acts); Griffin v. State, 639 So. 2d 966, 968 (Fla. 1994) ("[E]vidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence. It is admissible under section 90.402 because it is a relevant and indispensable part of the act which is in issue." (quotations omitted)).

While the victim's testimony that she also washed Woodruff's penis during the first shower incident helped contextualize whether Woodruff touched her genitals in a lewd or lascivious manner, the testimony as to the two other acts of alleged molestation occurring during the second, uncharged shower incident fails either to clarify, explain, or contextualize the acts Woodruff was charged with, as the second shower occurred days after the first one. See Mendez, 271 So. 3d at 1100; Downs v. State, 40 So. 3d 49, 52 (Fla. 5th DCA 2010) (holding that evidence that defendant molested victim in the shower two years after charged incident of sexual battery was not inextricably intertwined and thus should have been barred by Williams rule). Thus, the testimony regarding the second shower incident was not admissible under either section 90.402 or 90.404 and should have been excluded as Williams rule evidence.

Because no evidence was presented at the evidentiary hearing to indicate that Woodruff's counsel had a strategic reason for failing to object to this inadmissible collateral crimes evidence, we agree that the evidence presented at the hearing was sufficient to demonstrate deficient performance for Strickland purposes. See Botto v. State, 307 So. 3d 1006, 1010 (Fla. 5th DCA 2020) (finding that failure to object to argument referencing unadmitted Williams rule evidence in lewd and lascivious molestation case constituted deficient performance and prejudice under Strickland). However, we find that under the circumstance present here, Woodruff has failed to satisfy Strickland's prejudice prong. While an erroneous admission of Williams rule evidence is "presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt *of the crime charged*," Straight v. State, 397 So. 2d 903, 908 (Fla. 1981) (emphasis added), the issue of prejudice for ineffective counsel purposes under Strickland is nonetheless a question of law reviewed de novo, separate and apart from any determination of error. Bruno v. State, 807 So. 2d 55, 62 (Fla. 2001). Strickland defines prejudice as requiring "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at

9

694; see also id. at 696 (noting that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding" and that "the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results").

Here, the record reveals no reasonable probability that the collateral crimes evidence improperly influenced the jury in convicting Woodruff on one count. Of the four charges, the jury found Woodruff guilty only of Count 4, based on the touching of the victim's vagina in the bedroom, before the first shower. He had also been charged with having the victim touch his penis during that same event (Count 2), but the jury distinguished between the two charges and acquitted him of only one despite both being based on effectively the same evidence. Importantly, the jury acquitted Woodruff of Count 3 (the first shower incident) even though the improper collateral crime evidence (the uncharged second shower incident) served only to bolster the victim's credibility (or discredit Woodruff's denial) as to the charged first shower incident. We take the fact that the jury was able to weigh the victim's credibility against Woodruff's and make an independent determination about his guilt as to each individual charge (as opposed to simply deciding that Woodruff must have been guilty of something by virtue of the volume of

allegations), coupled with the fact that all of the collateral crimes evidence at issue related only to acts that Woodruff was ultimately acquitted of and which occurred <u>after</u> the only act that resulted in a conviction, to indicate that there is no reasonable probability that counsel's failure to object to the admission of the improper <u>Williams</u> rule evidence affected the outcome of this proceeding.

Accordingly, with the prejudice prong of <u>Strickland</u> unmet, we reverse the postconviction court's order granting a new trial based on ineffective assistance of counsel and remand for reinstatement of the judgment and sentence.

Reversed and remanded.